CIRCLE INDUSTRIES, DIVISION OF NASTASI–WHITE, INC., Plaintiff,

v.

CITY FEDERAL SAVINGS BANK, Crestmont Savings and Loan Association, Elysian Federal Bank, Colonial Savings Bank, National Westminster Bank NJ, First Jersey Savings & Loan Association, Statewide Savings Bank, Alexander Hamilton Savings & Loan Association, Interboro Savings & Loan Association, Nutley Savings & Loan Association, Lakeview Savings & Loan Association, Pulawski Savings & Loan Association, West Essex Savings Bank, Columbia Savings & Loan Association, and First Nationwide Federal Savings Bank, Defendants.

No. CV 90–0653 (ADS).

United States District Court, E.D. New York.

Oct. 16, 1990.

---

448

Shaw, Licitra, Esernio & Schwartz, P.C., Garden City, N.Y., for plaintiff.

Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, N.J., for Resolution Trust Corp., as Receiver of defendant City Federal Sav. Bank.

Cole, Yamner & Bray, Paterson, N.J., and Kornstein, Veisz & Wexler, New York City, for defendant Crestmont Sav. and Loan Ass'n.

Cassidy, Foss & San Filippo, Red Bank, N.J.; for Resolution Trust Corp., as Conservator of defendant Elysian Federal Sav. Bank and as Receiver of defendant Colonial Sav. Bank.

Winston & Strawn, New York City, and Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for defendant National Westminster Bank N.J.

Clapp & Eisenberg, Newark, N.J., for defendants First Jersey Sav. & Loan Ass'n, Alexander Hamilton Sav. & Loan Ass'n, Nutley Sav. & Loan Ass'n, Pulawski Sav. & Loan Ass'n, West Essex Sav. Bank, First Nationwide Federal Sav. Bank, and Lakeview Sav. & Loan Ass'n.

Bogart, Ryan and Campisano, Jersey City, N.J., for defendant Statewide Sav. Bank.

McMahon, Martine & Merritt, New York City, and Schumann, Hanlon, O'Connor & McCrossin, Jersey City, N.J., for defendants Interboro Sav. & Loan Ass'n and Columbia Sav. & Loan Ass'n.

## MEMORANDUM AND ORDER

SPATT, District Judge.

This action involves a real estate development project in Jersey City, New Jersey and its financing by certain savings and loan associations, some of which are now in receivership. Since the Court finds that it does not have subject matter jurisdiction of the claims asserted against an indispensable party to this action, the complaint is dismissed in its entirety.

## I. THE MOTIONS

Certain defendants moved to dismiss the Complaint and the Amended Complaint [1] on

---

1. The plaintiff filed the Complaint on February 23, 1990 and the Amended Complaint on May 1, 1990. Most defendants moved to dismiss the Complaint. The Resolution Trust Corporation,

various grounds: Resolution Trust Corporation ("RTC"), as Receiver of defendant City Federal Savings Bank ("City Federal"), on the grounds that the Court lacks subject matter jurisdiction (Fed.R.Civ.P. 12[b][1]) and that venue is improper (Fed.R.Civ.P. 12[b][3]); RTC, as Conservator of defendant Elysian Federal Savings Bank ("Elysian Federal") and as Receiver of defendant Colonial Savings Bank ("Colonial"), on the grounds that the Court lacks subject matter jurisdiction (Fed.R.Civ.P. 12[b][1]), the Court lacks personal jurisdiction (Fed.R.Civ.P. 12[b][2]), venue is improper (Fed.R.Civ.P. 12[b][3]), failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12[b][6]), lack of an indispensable party (Fed.R.Civ.P. 12[b][7]), or, in the alternative, that this action should be transferred to the District of New Jersey pursuant to 28 U.S.C. §§ 1404 and 1406; defendant Crestmont Savings and Loan Association on the grounds that the Court lacks subject matter jurisdiction (Fed.R.Civ.P. 12[b][1]), the Court lacks personal jurisdiction (Fed.R.Civ.P. 12[b][2]), venue is improper (Fed.R.Civ.P. 12[b][3]), or, in the alternative, that this action should be transferred to the District of New Jersey pursuant to 28 U.S.C. §§ 1404 and 1406; and defendants First Jersey Savings & Loan Association, Alexander Hamilton Savings & Loan Association, Nutley Savings & Loan Association, Lakeview Savings & Loan Association, Pulawski Savings & Loan Association, West Essex Savings Bank, and First Nationwide Federal Savings Bank on the grounds that the Court lacks subject matter jurisdiction (Fed.R.Civ.P. 12[b][1]), the Court lacks personal jurisdiction (Fed.R.Civ.P. 12[b][2]), venue is improper (Fed.R.Civ.P. 12[b][3]) or, in the alternative, that this action should be transferred to the District of New Jersey pursuant to 28 U.S.C. §§ 1404 and 1406. Defendants National Westminster Bank, NJ, Interboro Savings & Loan Association and Columbia Savings & Loan Association moved, pursuant to 28 U.S.C. § 1404, to transfer this action to the District of New Jersey.

Plaintiff opposed both the motions to dismiss and the motions to transfer.

In its original moving papers the RTC also moved to be substituted as the real party in interest as Conservator of Elysian Federal and as Receiver of Colonial. After the RTC filed its motions the Office of Thrift Supervision ("OTS") appointed the RTC as the Receiver for Elysian Federal effective June 29, 1990. (Affidavit of Paul G. Kostro, Esq., September 25, 1990, ¶ 2) The RTC subsequently amended its motion to be substituted as the real party in interest as Receiver for Elysian Federal. The Court having received no opposition, the RTC's motion to be substituted as the party in interest as Receiver for defendants Elysian Federal and Colonial is granted. (*See* 12 U.S.C. § 1441a[b][10][F] [RTC has the power "[t]o sue and be sued in its corporate capacity in any court of competent jurisdiction"])

Cognizant of the fact that it must decide the defendants' Rule 12(b)(1) motion first (*see Rhulen Agency, Inc. v. Alabama Insurance Guaranty Ass'n*, 896 F.2d 674, 678 [2d Cir.1990] [quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 [1969]] ["[w]here, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed.R.Civ.P., as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the Amended Complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined' "]), the Court finds that (1) it does not have subject matter jurisdiction over the instant action as it relates to defendants City Federal, Colonial, and Elysian Federal; and that (2) City Federal is an indispensable party to this action, and as a result the Amended Complaint is dismissed as to all of the defendants pursuant to

as Conservator of Elysian Federal Savings Bank and as Receiver of Colonial Savings Bank, moved against both the Complaint (*see* Notice of Motion dated April 20, 1990) and the Amended Complaint (*see* Notice of Motion dated May 21, 1990). Since the Court finds that there is no material difference between the plaintiff's Complaint and Amended Complaint, the Court treats all of the defendants' motions as moving to dismiss the Amended Complaint.

Fed.R.Civ.P. 12(b)(7). Since the Amended Complaint is dismissed in its entirety, the defendants' other motions are moot (*see Rhulen Agency, Inc. v. Alabama Insurance Guaranty Ass'n, supra*, 896 F.2d at p. 678).

## II. BACKGROUND

This action concerns a real estate development project for the construction of 1,690 luxury apartment units in Jersey City, New Jersey known as "Port Liberte." The owner of the project is a New Jersey limited partnership named "Port Liberte Partners."

The project was financed by a consortium of New Jersey banks, the defendants in this action. Certain of these banks also retained an equity interest in the project. According to the Amended Complaint, the defendant banks provided approximately $158,000,000 in financing for the construction and land development of the project.

Defendant City Federal was the "lead lender" in the financing consortium and owned a twenty five percent equity interest in the project. As lead lender, City Federal was charged with the responsibility of overseeing the project and was authorized to carry out "all" negotiations with the general contractor and Port Liberte Partners.

Plaintiff, a New York corporation, was a subcontractor on the Port Liberte project. Plaintiff contracted with the general contractor, Sordoni Construction Co. ("Sordoni"), to provide gypsum drywall and interior carpentry for the agreed upon price of $3,923,000.

In early 1989, Port Liberte Partners defaulted on its loans and construction at the project ceased. According to the plaintiff, "[o]n or about July 9, 1989, arrangements were made with the Defendants acting by and through City Federal, as the lead lender, and Sordoni, as the Construction Manager, pursuant to which the Defendants agreed to provide sufficient funding to complete the so-called 'Phase I' of construction at the Project." In addition, the plaintiff alleged as follows:

"¶ 32. On July 11, 1989, Sordoni represented to the various subcontractors, including Plaintiff, at a meeting held for that purpose on the construction site, that Sordoni had received confirmation from Defendant City Federal and the Owner that sufficient financing had been secured to pay past due invoices and to complete the balance of Phase I of the project....

¶ 33. On or about July 11, 1989, Defendant City Federal delivered a letter dated the same date to the Owner ... pursuant to which Defendant City Federal, acting for itself and the other Defendants, represented to the Owner that the loan being assembled would be sufficient in amount to complete Phase I. Such letter was delivered by or on behalf of the Defendants to Sordoni and the Owner with the knowledge and understanding that such letter would be used by Sordoni, acting on behalf of City Federal and the other Defendants, and the Owner, to induce subcontractors, including Plaintiff, to return to work and complete Phase I of the project....

\*       \*       \*       \*       \*       \*

¶ 36. On July 11, 1989, Defendant City Federal knew, or should have known, that it was financially troubled or insolvent and, in fact, unable to carry out its representations to the Plaintiff and the other subcontractors on the Project that it and the other Defendants were in fact unable to finance completion of the Project."

Circle Industries alleged that in reliance on the defendants' assurances it expended $1,500,000 in work, labor and services on the Port Liberte project, none of which has been paid to the plaintiff.

On December 8, 1989, the Director of the OTS declared City Federal insolvent and ordered it closed. The RTC was appointed Receiver of City Federal on December 8, 1989. On November 8, 1989 the RTC was appointed Receiver of Colonial. On February 16, 1989 the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed Conservator of Elysian Federal. The RTC succeeded the FSLIC as Conser-

vator of Elysian Federal on August 9, 1989, and on June 29, 1990 the RTC was appointed Receiver of Elysian Federal.

Plaintiff instituted this action by filing the Complaint on or about February 23, 1990, after the RTC was appointed Receiver of City Federal and Colonial and after the RTC succeeded the FSLIC as Conservator of Elysian Federal. The Complaint and the Amended Complaint predicated jurisdiction on diversity of citizenship, 28 U.S.C. § 1332—the plaintiff is a citizen of New York and the defendants are citizens of New Jersey. The Court also notes that 12 U.S.C. § 1441a(*l*)(1) provides that "any civil action, suit, or proceeding to which the [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding."

The Amended Complaint alleged four causes of action: (1) the plaintiff relied on the defendants' knowingly false representations that financing was available to complete "Phase I" of the project; (2) the defendants breached their covenant to deal in good faith with the plaintiff; (3) the defendants breached a fiduciary duty owed to the plaintiff when they failed to notify the plaintiff that they were unable to finance the completion of the project; and (4) the plaintiff relied on the defendants' knowingly false representations that financing was available to complete "Phase I" of the project by releasing certain claims against Sordoni and the defendants for "mobilization costs" in the amount of $150,000. The Amended Complaint sought $1,650,000 in compensatory damages and $15,000,000 in punitive damages.

## III. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants RTC (as Receiver of defendants City Federal, Colonial, and Elysian Federal), First Jersey Savings & Loan Association, Alexander Hamilton Savings & Loan Association, Nutley Savings & Loan Association, Lakeview Savings & Loan Association, Pulawski Savings & Loan Association, West Essex Savings Bank, First Nationwide Federal Savings Bank, and Crestmont Savings and Loan Association moved to dismiss the Amended Complaint for lack of subject matter jurisdiction on the ground that the plaintiff failed to exhaust the administrative procedures for asserting claims against the RTC as set forth in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d).

FIRREA provides a detailed regulatory framework so as to restore the financial integrity of the thrift industry's deposit insurance fund and to "provide funds from public and private sources to deal expeditiously with failed depository institutions." (*See* P.L. 101–73, 103 Stat. 183, § 101[8]) Central to this purpose was the establishment of the RTC "to contain, manage and resolve failed savings associations." (*See Id.* at § 101[7]; *see also* 12 U.S.C. § 1441a[b][3][A] [the RTC shall "manage and resolve all cases involving depository institutions"]) As of August 9, 1989, the date FIRREA went into effect, the RTC succeeded the FSLIC "as conservator or receiver with respect to any institution for which the [FSLIC] was appointed conservator or receiver" from January 1, 1989 to August 9, 1989 (*see* 12 U.S.C. § 1441a[b][6]) and assumed all rights and obligations of the FSLIC with respect to any guarantee issued during that same period (*see* 12 U.S.C. § 1441a[h][1]). In addition, FIRREA provided that the Federal Deposit Insurance Corporation ("FDIC") would manage and act for the RTC (*see* 12 U.S.C. §§ 1441a[b][1][C], [b][3], and [m][1]), and that the RTC has "the same powers and rights to carry out its duties with respect to [depository institutions insured by the FSLIC] as the [FDIC] has under ... [12 U.S.C.A. §§ 1821, 1822, and 1823]...." (12 U.S.C. § 1441a[b][4])

In furtherance of its stated goal to deal expeditiously with failed savings and loan institutions, FIRREA established administrative procedures for adjudicating claims in the first instance asserted against the RTC as Receiver of a failed thrift institution. (*See* 12 U.S.C. 1821[d][5]–[14]) Entitled "Procedures for determinations of

claims," 12 U.S.C. § 1821(d)(5) provides in relevant part as follows:

"(A) Determination Period

(i) in general

Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim."

According to an RTC attorney, RTC "administrative claims procedures" require that all claims asserted against the RTC must be submitted in writing and filed with the RTC's regional field office in Atlanta, Georgia. RTC personnel in Atlanta review the claim and advise the claimant as to the RTC's determination. (O'Neill Aff., ¶¶ 4 and 5) The Receiver can either accept or reject all or a portion of the claim presented to it (12 U.S.C. § 1821[d][5][D]).

A claimant can obtain *de novo* judicial review of the RTC's determination pursuant to 12 U.S.C. § 1821(d)(6), which provides as follows:

"Provision for agency review or judicial determination of claims

(A) In general

Before the end of the 60 day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) *or file suit on such claim* (or continue an action commenced before the appointment of the receiver) *in the district court or territorial court of the United States for the district within which the depository institution's principal place of business is located* or the United States District Court for the District of Columbia (and such court shall have jur-

isdiction to hear such claim)." (12 U.S.C. § 1821[d][6] [emphasis added])

Pursuant to 12 U.S.C. § 1821(d)(13)(D), FIRREA expressly limits the jurisdiction of United States District Courts to *de novo* review of claims first presented to the Receiver:

"Limitation on judicial review

Except as otherwise provided in this subsection, *no court shall have jurisdiction over*—

(i) *any claim* or action for payment from, *or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been assigned receiver,* including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver." (12 U.S.C. § 1821[d][13][D] [emphasis added])

FIRREA itself does not define or limit the meaning of the term "claim" (*see* 12 U.S.C. § 1813), although the word "claim" is used broadly in FIRREA (*see, e.g.,* 12 U.S.C. § 1821[*l*] ["**Damages.** In any proceeding related to any claim against an insured depository institution's director, officer, employee, agent, attorney, accountant, appraiser, or any other party employed by or providing services to an insured depository institution, recoverable damages determined to result from the improvident or otherwise improper use or investment of any insured depository institution's assets shall include principal losses and appropriate interest"]).

Neither plaintiff's Amended Complaint, nor any affidavit submitted by the plaintiff in opposition to the defendants' motion (*see American Federation of State v. County of Nassau,* 609 F.Supp. 695, 701 n. 4 [E.D. N.Y.1985] ["facts outside of the pleadings may be considered on a 12[b][1] motion"]; *accord Exchange Nat. Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1131 [2d Cir. 1976]), stated that Circle Industries' presented any of the claims alleged in the Amended Complaint to the RTC pursuant to 12 U.S.C. 1821(d)(5)–(14). Further, coun-

sel for the RTC attested that the RTC has no record of receiving any claim submitted by Circle Industries or any representative thereof. (Affidavit of Glenn D. Curving, Esq., May 21, 1990, ¶ 5) Since the RTC was appointed Receiver of City Federal and Colonial and succeeded the FSLIC as Conservator of Elysian Federal before Circle Industries brought this action, pursuant to 12 U.S.C. §§ 1821(d)(5)–(14), and in particular 12 U.S.C. § 1821(d)(13)(D), the Court does not have jurisdiction to hear the claims asserted by Circle Industries in the Amended Complaint against City Federal, Colonial and Elysian Federal.

The Court's holding is supported by the legislative history. The Report of the House Banking, Finance and Urban Affairs Committee recommending passage of FIRREA in relevant part stated as follows:

"*Claims Determination*

The reported bill directs the FDIC to promulgate rules and regulations establishing a variety of administrative procedures and systems to determine contested claims. These procedures will apply to proceedings conducted by the FDIC and to those conducted by the RTC. *After exhaustion of streamlined administrative procedures*, a claimant has a choice to either bring the claim de novo in the District Court in which the insured institution had its principal place of business or have the claim determination reviewed by one or more administrative processes....

*This construct of administrative resolution and de novo judicial determination is responsive to the constitutional and statutory concerns with the FSLIC's current claims adjudication process* as outlined by the Supreme Court in *Coit* Independence Joint Venture vs. *FSLIC* (March 21, 1989). In that case, the Supreme Court held that the FSLIC did not have the statutory authority to adjudicate certain State law claims against failed savings and loan associations. In addition, the Court noted that 'serious constitutional difficulties' would be presented by the FSLIC's claims process even if it were authorized by statute, because granting even administra-

tive judges the exclusive authority, with only limited judicial review, to adjudicate certain categories of State law claims under these circumstances may invade the domain reserved for Article III courts provided by the U.S., Constitution. *Justice O'Connor in that opinion noted, however, that exhaustion could be required if an administrative procedure with clear time limits were established. The Committee believes it has provided a clear set of guidelines for claimants and for the FDIC with reasonable and specific time limits.*

The claims determination procedure set forth in subsection (1) creates a system which not only meets the concerns raised by the *Coit* case, but also enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly. The exhaustion requirements should lead to a large number of claims being resolved without resort to further procedures. In addition, the administrative procedures, including review procedures, created by the FDIC, if made sufficiently attractive to claimants, should lead to a large number of claimants agreeing to present their claims through these forums rather than in court. Thus, the claim resolution process established in this action should allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts.

There shall be no judicial review of the administrative determination not to allow a claim. Rather, the claimant must file suit or continue a previously filed suit to establish a disallowed claim. The claimant and the FDIC, however, may choose an administrative review." (House Rep. No. 101–54(I) at pp. 418–19, reprinted in 2 U.S. Code Cong. and Admin. News, 101st Cong., 1st Sess. at pp. 214–215 [emphasis added])

Further, the House Judiciary Committee reported on FIRREA as follows:

"... As recognized by the Banking Committee, this new subsection authorizes the Corporation to make rules and regu-

lations for the conduct of conservatorship and receiverships, and the allowance of claims and 'consensual administrative adjudication.' *It provides for judicial review of decisions made under these rules and regulations only as this subsection itself provides;* and if administrative adjudication is the selected alternative, the only judicial review available will be that provided by the Corporation's regulations.

The Judiciary Committee amended this subsection both to clarify its provisions and to ensure that it comports with Supreme Court requirements for adjudication of claims as established in *Coit Independence Joint Venture v. FSLIC,* No. 87–996, 57 L.W. 4347 (Slip opinion issued March 21, 1989).

*The Committee amendment provides that after an initial decision on a claim, every claimant has the right to bring an action on that claim in a United States District Court.* If there is no initial decision within 180 days, a claimant may file an action on that claim in the appropriate district court. However, the provision as amended also gives the claimant the option, instead of bringing an action on the initial decision in the district court, of selecting a de novo consideration of the claim with an opportunity for a hearing on the record, i.e. pursuant to the Administrative Procedure Act, 5 U.S.C. 554. If the claimant selects this option, judicial review of the administrative procedure will be pursuant to the Administrative Procedure Act, rather than de novo." (House Rep. No. 101–54(V) at p. 12, reprinted in 2 U.S. Code Cong. and Admin. News, 101st Cong., 1st Sess. at p. 405 [emphasis added])

As is clearly indicated in the legislative history of FIRREA, Congress intended that a district court not have subject matter jurisdiction of state law claims asserted against the RTC similar to those claims asserted against the FSLIC in *Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.,* 489 U.S. 561, 109 S.Ct. 1361, 1364–65, 103 L.Ed.2d 602 (1989), until those claims are first presented to and ad-

judicated by the RTC or the FDIC. (*See* 12 U.S.C. §§ 1821[d][5] and [d][13][D])

The claims asserted in *Coit* are similar to the claims alleged by Circle Industries in the instant case. The plaintiff in *Coit*, a real estate concern, obtained two loans totalling $50 million from a savings and loan association to finance a real estate development project. (*Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp., supra,* 109 S.Ct. at p. 1364) Disagreements among the parties over the financing led to a lawsuit filed in the state court in which the plaintiff alleged that (1) the savings and loan association's "profit participation" fee was usurious; (2) the savings and loan association breached the loan agreement by refusing to renew certain notes as promised and threatening to foreclose on the subject property; and that (3) the savings and loan association's conduct was a breach of its fiduciary duty and duties of good faith and fair dealing. (*Id.* at pp. 1364–65)

Two months after the plaintiff in *Coit* filed suit in the state court, FSLIC was appointed receiver of the defendant savings and loan association. FSLIC removed the case to federal court and moved to dismiss the action for lack of subject matter jurisdiction because the plaintiff had failed to exhaust its administrative remedies. (*Id.* at p. 1365) The Supreme Court in *Coit* reversed the lower courts' dismissal of the complaint, holding that the district court had subject matter jurisdiction because the administrative regulations did not give FSLIC the authority to review the plaintiff's state claims in the first instance and did not provide for *de novo* consideration of the plaintiff's claims by the federal court. (*Id.* at p. 1371) However, Justice O'Connor, writing for seven of the nine justices on the Court, explicitly stated that in accordance with Article III of the United States Constitution, a federal district court need not have original subject matter jurisdiction of state law claims asserted against the FSLIC as long as (1) "the Bank Board's regulations only required claimants to give FSLIC notice of their claims and then wait for a reasonable period of time before filing suit while FSLIC decided whether to

pay, settle, or disallow the claim" and (2) the regulations contemplated *de novo* district court review of any adjudicatory finding made by the FSLIC. (*Id.* at pp. 1374–75)

The legislative history explicitly indicated that FIRREA was drafted so as to satisfy both of the *Coit* requirements (*see* 12 U.S.C. §§ 1821[d][5] [establishing "reasonable periods of time" for adjudication of administrative claim] and [d][6] [establishing district court *de novo* review of administrative decision]). In enacting FIRREA, Congress intended litigants like Circle Industries to first submit their claims against failed savings and loan institutions to the RTC or FDIC before commencing an action in the district court. (*Accord Patrick T. Frawley & Associates v. City Federal Savings Bank,* 1990 WESTLAW 63546, Allfeds Library, p. 7 [E.D.Pa. May 9, 1990] ["[a]dditionally, plaintiffs have not exhausted all administrative remedies provided by the [FIRREA]. Therefore, this court has no jurisdiction over the claims [for breach of contract, breach of fiduciary duty and fraudulent misrepresentation] raised in plaintiff's complaint"]; *Tuxedo Beach Club v. City Federal Savings Bank,* 737 F.Supp. 18, 20 [D.N.J.1990] [after citing FIRREA legislative history discussing exhaustion of administrative procedures for claims asserted against failed institutions, court stated that "Congress has determined that these administrative procedures are the most efficient way to resolve the hundreds of claims with which a receiver might be confronted"] *see also Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 [1975] ["[e]xhaustion is generally required as a matter of preventing premature interference with agency processes so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefits of its experience and expertise, and to compile a record which is adequate for judicial review"]).

Since Circle Industries has not presented its claims against City Federal, Colonial and/or Elysian Federal to the RTC, the Court does not have subject matter jurisdiction of Circle Industries' claims against those defendants. As a result, City Federal's, Colonial's, and Elysian Federal's motions to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) are granted.

## IV. MOTION TO DISMISS FOR ABSENCE OF AN INDISPENSABLE PARTY

Defendant RTC, as Receiver of defendants Colonial and Elysian Federal, moved to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(7) (*see* RTC Notice of Rule 12[b] Motion, May 21, 1990, p. 2) on the grounds that without City Federal as a defendant this action lacks an indispensable party (*see* Fed.R.Civ.P. 19; 3A Moore's Federal Practice, ¶ 19.07[0] [1989] ["Rule 19(b) comes into play only where joinder of the absent party is not feasible.... The joinder of a party pursuant to subdivision (a) [of Rule 19] is not feasible where ... joinder would deprive the court of subject-matter jurisdiction of the action"]).

Fed.R.Civ.P. Rule 19(b) provides as follows:

"If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

In deciding a Rule 12(b)(7) motion, Fed.R. Civ.P. 19(b) requires the Court to first de-

termine whether either City Federal, Colonial, or Elysian Federal is "a person described in subdivision (a)(1)–(2) hereof" (*see* Fed.R.Civ.P. 19[b]). As the "lead" bank in the lending consortium, as a holder of a twenty-five percent equity interest in the real estate venture, and as the "sole" lending negotiator as to the terms of the financing agreements (*see* Amended Complaint, ¶ 23), City Federal is a person in whose "absence complete relief cannot be accorded among those already parties" (*see* Fed.R.Civ.P. 19[a][1]).

The second determination required under Fed.R.Civ.P. 19 is whether the instant action can proceed in City Federal's absence—that is, whether City Federal is an "indispensable" party (*see* Fed.R.Civ.P. 19[b]). (*See* 5A Wright & Miller, Federal Practice and Procedure: Civil 2d [1990] § 1359 at p. 425 ["if the absentee cannot be joined, the court then must determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him or to dismiss the action"]) Such a determination is an equitable one and is left to the Court's discretion. (*See Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 [2d Cir.1984])

"The decision whether to dismiss (*i.e.*, the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." (*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 [1968]) As explained by Judge Weinfeld:

"Mr. Justice Harlan [in *Provident Bank v. Patterson*] particularized four 'interests' to be evaluated in deciding a claim of indispensability. First, the interest of the plaintiff in having a forum, with the strength of this interest dependent upon 'whether a satisfactory alternative exists.' Second, the defendants' interest in avoiding multiple litigation and inconsistent relief. Third, the interests of the non-party whom it would have been desirable to join even though in his absence a judgment is not *res judicata* as to, or

legally enforceable against, him. Finally, the interest of the courts and the public in complete, consistent and efficient settlement of controversies." (*Felix Cinematografica v. Penthouse International Ltd.*, 99 F.R.D. 167, 169 [S.D.N.Y.1983] [citations omitted])

Applying these factors, the Court finds that City Federal is "indispensable" to this action. First, the plaintiff will have an alternative forum to litigate its claims against all of the named defendants, if it chooses, after exhausting its administrative remedies with respect to claims against the RTC as Receiver of City Federal, Colonial, and Elysian Federal. FIRREA established a reasonable time period for the RTC to adjudicate such claims (*see supra*). Further, the plaintiff has given no indication that it would be prejudiced, *i.e.* by certain statute of limitations, unavailable witnesses or otherwise by exhausting its administrative remedies before proceeding in federal court.

Applying the second factor, it is clear that all of the defendants other than City Federal, Colonial and Elysian Federal (the "remaining defendants") have a strong interest in avoiding multiple litigation and potential inconsistent relief were this action to proceed without City Federal as a party.

City Federal's alleged conduct is central to the plaintiff's causes of action. In fact, a fair reading of the Amended Complaint leads the Court to conclude that City Federal is the *only* defendant whose action is relevant to the plaintiff's claims. (*See H & H International Corp. v. J. Pellechia Trucking*, 119 F.R.D. 352, 354 [S.D.N.Y. 1988] ["the question to be resolved in this action are so entangled with the question of the authority and liability of the middleman Target that adequate and just relief cannot be granted in its absence"]) For example, the plaintiff's claims of fraud are explicitly grounded on City Federal's oral and written representations of July 11, 1989. (*See* Amended Complaint, ¶¶ 32 and 33) In addition, City Federal was the "lead" bank in the lending consortium and the "sole" bank who negotiated with the

owners, contractors and sub-contractors of the Port Liberte project. (*See* Amended Complaint, ¶ 23; *see also, e.g.,* Affidavit of George S. Condal, May 17, 1990, ¶ 5 ["City Federal has always had the responsibility for administering and servicing the loan, including monitoring the Project, making the disbursements and dealing with the Borrower"]) [2]

The remaining defendants would be unable to assert claims for contribution and indemnity without City Federal present. In fact, some defendants have already filed claims against City Federal with the RTC. (*See* Affidavit of Joseph A. Kelly, May 17, 1990, ¶ 9 [Nutley Savings & Loan Association]; Affidavit of Charles Filippo, May 17, 1990, ¶ 10 [West Essex Savings Bank]; Affidavit of Arthur Hatzopoulos, May 17, 1990, ¶ 9 [First Nationwide Federal Savings Bank]; and Affidavit of Joseph A. Mangano, May 17, 1990, ¶ 9 [Alexander Hamilton Savings & Loan Association]) Were this case to go forward without City Federal, a subsequent action brought by the remaining defendants against City Federal could result in inconsistent adjudications as to (a) City Federal's liability to the plaintiff; (b) the remaining defendants' derivative liability to the plaintiff; and (c) the remaining defendant's indemnification from or liability to City Federal. The Court finds that there is a real possibility of harm to the remaining defendants if this action proceeds without City Federal.

As to the third Rule 19(b) factor, City Federal will be harmed if the instant action goes forward without it. According to the Amended Complaint, City Federal's conduct and representations are the central issues in this action. The remaining defendants are unlikely to protect City Federal's interest in City Federal's absence, given their desire to insure that any finding of wrongdoing is established only as to City Federal. Even though in its absence a judgment will not be res judicata, it is in City Federal's interest to be present when Circle Industries' claims against the remaining defendants—claims principally

based on City Federal's conduct—are adjudicated (*see Felix Cinematografica v. Penthouse International Ltd., supra,* 99 F.R.D. at p. 169).

Finally, the fourth Rule 19(b) factor of the Court's and the public's interest in efficient settlement of controversies supports a finding that City Federal is an indispensable party. Even without City Federal as a party to this action, the plaintiff's discovery efforts and evidentiary proof will be directed at City Federal. A complete, consistent and efficient adjudication of plaintiff's claims against the remaining defendants could only be achieved in an action where City Federal is also a party. Such an adjudication could only occur after the plaintiff exhausts its administrative remedies, a procedure which itself serves the public interest, as defined by Congress, of an orderly, efficient adjudication of claims made against insolvent savings and loans institutions (*see* House Report No. 101–54(I), *supra,* at p. 307 ["[t]he primary purposes of [FIRREA] are to ... establish organizations and procedures to obtain and administer the necessary funding to resolve failed thrift cases and to dispose of the assets of these institutions"]).

In sum, the Court finds in equity and good conscience (*see Prescription Plan Service Corp. v. Franco,* 552 F.2d 493, 496 [2d Cir.1977] [court must take a "flexible" approach to issue of whether a party is indispensable, as "a mechanical determination of who is an indispensable party is clearly inappropriate in light of Rule 19[b]'s reference to 'equity and good conscience'"]) that City Federal is an indispensable party (*see* Fed.R.Civ.P. Rule 19[b]). Since the Court does not have subject matter jurisdiction of the claims alleged against City Federal, the RTC's Rule 12(b)(7) motion to dismiss the Amended Complaint as to the remaining defendants is granted.

## V. CONCLUSION

For all of the reasons discussed above, the Amended Complaint is dismissed in its

---

**2.** Matters outside the pleadings may be considered in ruling on a Rule 12(b)(7) motion. (*See Sims v. Mack Trucks, Inc.,* 407 F.Supp. 742, 743 n. 2 [E.D.Pa.1976] [citing 2A Moore's Federal Practice, ¶ 12.09[3] [2d ed.1975]])

entirety. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.