### FEDERAL DEPOSIT INSURANCE CORPORATION

v.

### Paul A. GRILLO, et al.

### No. C–91–431–L.

United States District Court,
D. New Hampshire.

Feb. 27, 1992.

Ralph F. Holmes for FDIC.

Richard B. McNamara for Daniel S. Day.

George A. Collins for Robert Ferraro.

### ORDER

LOUGHLIN, Senior District Judge.

This order addresses the Federal Deposit Insurance Corporation's (FDIC) motion to

**642**

dismiss for lack of subject matter jurisdiction filed in *Berlandi v. FDIC,* 91–321–L.

*Background*

Plaintiffs, Susan Berlandi and Robert Ferraro, brought suit in Hillsborough County Superior Court on July 29, 1991 against among others, the Hillsborough Bank & Trust Company. On August 30, 1991, due to the bank's insolvency, the FDIC was appointed receiver for the bank. FDIC removed the case to this court pursuant to 12 U.S.C. ·§ 1819(b)(2)(B) and 28 U.S.C. § 1446. Another case involving the same parties (*FDIC v. Paul A. Grillo et al.,* 91–431–L) was also removed to this court and has been consolidated with the instant case as of December 6, 1991. (*See* Order of Consolidation doc. no. 10.)

The facts pertinent to the consolidated cases are as follows. On or about March 22, 1989, BFG Development Corporation, Inc. (BFG) obtained a $175,000 open end credit loan from defendant bank in order to develop a tract of real estate. Plaintiffs Berlandi and Ferraro and defendant Grillo are shareholders, officers and directors of BFG. Defendant Grillo signed the promissory note evidencing the loan on behalf of the corporation. Apparently plaintiffs and Grillo signed individual personal guarantees to secure the note. Plaintiffs contend that they did not sign the guarantees. Instead, plaintiffs allege that defendant Grillo, with the aid of defendant Daniel Day, an employee and agent of defendant bank, fraudulently executed the personal guarantees. The loan was further secured by the assignment of a note and mortgage held by Berlandi, Grillo and Ferraro. The BFG note is in default and defendant bank has made demands against the personal guarantees.

Plaintiff's attorney, Paul W. Hodes, withdrew from the case on Nov. 6, 1991. Attorney George Collins has filed an appearance as of December 23, 1991 for Ferraro. Berlandi is now appearing pro se. The instant motion is dated October 1, 1991 and was filed on October 2, 1991, shortly before Attorney Hodes withdrew.

*Discussion*

At the outset, it is noted that plaintiffs have not filed a response to defendant's motion to dismiss. Taking into account that plaintiff's counsel withdrew shortly after the filing of the instant motion and since the motion involves the court's jurisdiction, the matter will be fully examined.

At issue in this motion to dismiss are provisions of the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73 which creates a comprehensive system for processing claims against failed financial institutions. The FIRREA provisions relevant to the instant matter are codified in 12 U.S.C. § 1821(d).

The FDIC contends that 12 U.S.C. § 1821(d)(5)(A)(i) read in conjunction with subsection (d)(13)(D) prevents the court from acquiring subject matter jurisdiction over the matter until plaintiffs have complied with the administrative claims procedure established by subsection (d)(5). 12 U.S.C. § 1821(d)(5)(A)(i) provides that:

Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

12 U.S.C. § 1821(d)(13)(D) provides:

**Limitation on judicial review.**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

When reading these two paragraphs in isolation from the other paragraphs of subsec-

tion (d), the FDIC would appear to be correct, i.e., district courts do not have subject matter jurisdiction until a party bringing a claim against a failed institution for which the FDIC has been appointed receiver has first exhausted its administrative remedies pursuant to paragraphs (d)(5) and (d)(6). In essence, FDIC's interpretation suggests that use of the administrative claims resolution procedure found in paragraphs (d)(5) and (6) is a mandatory requirement that must be satisfied before any court may have jurisdiction over a claim against the FDIC as receiver. However, the exception language that begins paragraph (d)(13)(D), "[e]xcept as otherwise provided in this subsection, ..." creates a flaw in the FDIC's interpretation of paragraph (d)(13)(D).

Before further elaborating on why the FDIC's interpretation is problematic, the Court will review the Congressional scheme for claims resolution as set forth in subsection (d) in order to provide a framework from which the flaw in the FDIC's reasoning will be readily apparent.

The FDIC is authorized to review claims pursuant to 12 U.S.C. § 1821(d)(3). As receiver, the FDIC must give prompt notice to the depository institution's creditors, giving the creditors a deadline date in which to file claims with proof no earlier than ninety days after the notice publication. 12 U.S.C. § 1821(d)(3)(B)(i). Once a claim is filed with the FDIC as receiver, the FDIC has 180 days from the time of filing to either allow or disallow the claim and give notice of the determination to the claimants. 12 U.S.C. § 1821(d)(5)(A)(i). If the FDIC disallows a claim, no court may review that determination. 12 U.S.C. § 1821(d)(5)(E). However, with the exception of an optional stay pursuant to 12 U.S.C. § 1821(d)(12), the filing of a claim with the FDIC does not prejudice the claimant's right to continue any action filed before appointment of the FDIC as receiver. 12 U.S.C. § 1821(d)(5)(F)(ii). Within sixty days after the running of the 180-day period in paragraph (d)(5)(A)(i), or notice of disallowance, whichever is shorter, the claimant may: seek administrative review of the claim pursuant to paragraph (d)(7); file suit in a United States District Court;

or, continue an action filed before appointment of a receiver. 12 U.S.C. § 1821(d)(6)(A). If the claimant requests and the FDIC agrees to pursue the administrative review procedure, the FDIC must consider the claim after an opportunity for a hearing on the record. The FDIC's final determination is subject to judicial review pursuant to Title 5 ch. 7 of the Administrative Procedures Act. 12 U.S.C. § 1821(d)(7)(A). The claimant may also choose, subject to the approval of all parties, alternative dispute resolution processes that must be established by the FDIC. 12 U.S.C. § 1821(d)(7)(B).

By alleging the existence of a valid and enforceable or perfected security interest as well as irreparable injury, a claimant may seek to have the claims dispute resolved by following an expedited claims determination procedure that shortens the claims determination procedure to 90 days. 12 U.S.C. § 1821(d)(8). The time allotted to seek review of the disallowance of a claim is also reduced from 60 days to 30 days. *Id.* Regardless of which claims resolution procedure claimant chooses, court jurisdiction over the claims is limited to the express grant of jurisdiction found in the provisions of subsection (d). 12 U.S.C. § 1821(d)(13)(D).

A review of the statutory claims resolution scheme, reveals that at least two paragraphs ((d)(5)(F)(ii) and (d)(12)) of the subsection conflict with the apparent meaning of paragraph (d)(13)(D) while one paragraph seems to reinforce paragraph (d)(13)(D)'s apparent meaning. Paragraph (d)(5)(F)(ii) provides that "[s]ubject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). Paragraph (d)(12) entitled "**Suspension of legal actions**" states that:

[a]fter appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed—

(i) 45 days, in the case of any conservator; and (ii) 90 days, in the case of any

receiver, in any judicial action or proceeding to which such institution is or becomes a party.

12 U.S.C. § 1821(d)(12).

Paragraph (d)(5)(E) states that no court may review the FDIC's decision to disallow a claim. This paragraph appears to confirm FDIC's interpretation of paragraph (d)(13)(D).

Read together, paragraphs (d)(5)(F)(ii) and (d)(13)(D) directly contradict each other. Paragraph (d)(5)(F)(ii) does not allow a claim filed with the receiver to affect a court action while paragraph (d)(13)(D) states that courts do not have jurisdiction over claims against assets obtained by the FDIC as receiver or claims concerning acts or omissions of the FDIC as receiver *except* as provided in subsection (d). Without subject matter jurisdiction, the court would not be able to grant the FDIC a stay pursuant to paragraph (d)(12). This would render paragraph (d)(12) a nullity. A number of courts, including this court, have confronted this apparent internal inconsistency each reaching different conclusions.

The first element needed to resolve this apparent conflict is the exception language found in paragraph (d)(13)(D). The next key to resolving this problem lies in the timing in which a lawsuit is brought relative to the time at which the FDIC is appointed receiver. The final key to resolving the dilemma created by the language of the statute is found by analyzing Congress' intent to create a multi-faceted claims resolution scheme that is consensual and not mandatory in nature.

The FDIC relies on the case, *Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank*, 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd, Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank*, 931 F.2d 7 (2nd Cir.1991), for the proposition that § 1821(d)(13)(D) precludes the court's exercising subject matter jurisdiction prior to the administrative adjudication of claims against the failed institution. However, the court in *Circle Industries* states that: "[s]ince the RTC was appointed Receiver of [the banks] ... before Circle Industries

brought this action, pursuant to 12 U.S.C. §§ 1821(d)(5)–(14), and in particular 12 U.S.C. § 1821(d)(13)(D), the Court does not have jurisdiction to hear the claims asserted by Circle Industries in the Amended Complaint against [the banks]." *Circle Industries*, 749 F.Supp. at 453. The *Circle Industries* court points out that there is a distinction between situations where the claimant brings a court action *prior* to the appointment of a receiver, and where the claimant files suit *after* the appointment of a receiver. Unfortunately, the court did not elaborate on this distinction and only characterized the case as one involving a court action filed after the appointment of a receiver. The interpretation adopted by the *Circle Industries* court is not persuasive as it did not involve a sufficient investigation of the effect the filing of a lawsuit before the appointment of a receiver would have under 12 U.S.C. § 1821(d).

The FDIC contends that the filing of a claim prior to the appointment of the FDIC as receiver does not affect the requirement that plaintiff exhaust its administrative remedies, as set forth in FIRREA, before the court can have subject matter jurisdiction over the claim. In support of this argument, the FDIC cites *United Bank of Waco, N.A. v. First Republic Bank of Waco*, 758 F.Supp. 1166 (W.D.Tex.1991) and *New Maine National Bank v. Reef*, 765 F.Supp. 763 (D.Me.1991).

The court in *Waco* did indeed hold that pre-appointment filings do not change the exhaustion of administrative remedies requirement. This court however, does not find the reasoning used by the *Waco* court to be convincing. Once again, reading paragraph (d)(5)(A) in isolation from the rest of § 1821(d), the *Waco* court's statement, "[t]o entertain this action, would permit persons holding claims against a depository institution to completely forego the administrative process described in Title 12 U.S.C. § 1821(d), and thereby, the letter of the law," would appear to be a logical conclusion. *Waco*, 758 F.Supp. at 1168. The *Waco* court has not addressed the in-

consistency raised by viewing § 1821(d) in its entirety and thus will not be followed.

The *Reef* court did attempt to resolve some of the inconsistencies created by the statutory provisions. Unfortunately, the court did not address the glaring inconsistency raised by reading paragraphs (d)(5)(F)(ii) and (d)(13)(D) together thus the *Reef* decision also will not be followed by this court.

The only interpretation of § 1821(d) that has been advanced that gives both meaning to all the provisions found in § 1821(d) and still allows the provisions to work harmoniously and with full effect is found in an exceptionally thorough opinion rendered by Judge Aldon D. Anderson of the United States District Court for the District of Utah. The opinion entitled *Marc Development, Inc. v. FDIC*, 771 F.Supp. 1163 (D.Utah 1991), has been adopted by this court in *Serge Marquis; Gail Marquis v. Federal Deposit Insurance Corporation*, 779 F.Supp. 6 (D.N.H.1991).

The *Circle Industries* court interpretation relied on by FDIC is supported by only a select few passages in the legislative history. Moreover, a complete reading of the legislative history contradicts that interpretation. This court in adopting Judge Anderson's interpretation follows a far more thorough, detailed and logical interpretation of the legislative intent that is supported by the language of the statutory provisions and the legislative history of the Act. Paragraph 13(D) does place a jurisdictional limitation on the court. However, "[t]he primary focus of the jurisdictional limit can be gleaned from the title of the paragraph 'Limitation on Judicial Review.' 12 U.S.C. § 1821(d)(13)(D)." *Marc Development*, 771 F.Supp. at 1167. "There shall be no judicial review of the administrative determination not to allow a claim. [*See* 12 U.S.C. § 1821(d)(5)(E).] Rather, the claimant must file suit or *continue* a previously filed suit to establish a disallowed claim." H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 334, 419, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 215 (emphasis added). As stated by Judge Anderson:

[t]he term 'continue' implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. A claimant could not 'continue' an action over which the court has been deprived of subject matter jurisdiction. The claimant would have to 'refile' such a lawsuit because the suit would have been dismissed due to lack of subject matter jurisdiction.

*Marc Development*, 771 F.Supp. at 1168–69. Paragraph (d)(13)(D) "was intended only to insulate FDIC from judicial review of its actions as either receiver or administrative claims processor in cases where the claim was *initiated after* FDIC had been appointed receiver." *Marc Development*, 771 F.Supp. at 1167–68.

In directly addressing the apparent conflict between paragraph (d)(13)(D) and paragraphs (d)(5)(F) and (d)(12), Judge Anderson states:

Paragraph (d)(13)(D) states that no court shall have jurisdiction except as otherwise provided in subsection d. *See* 12 U.S.C. § 1821(d)(13)(D). This leaves only two routes by which a claimant can pursue an action in court. First, for a post receivership lawsuit, the statute permits a claimant to file suit within 60 days after the FDIC allows or disallows a claim filed with it. *See* 12 U.S.C.A. § 1821(d)(6). Second, paragraph (d)(5)(F)(ii) contemplates that lawsuits predating the receivership are intended to continue without prejudice except for the optional 90 day stay provided by paragraph (d)(12). This interpretation, reading subsection d to permit preexisting lawsuits to proceed without prejudice, gives effect to the stay paragraph and accomplishes the paragraph's purpose as explained by Congress, unlike the FDIC proposal. Congress intended the 90 day stay to give the FDIC a delay to acquaint itself with a lawsuit to which it abruptly becomes a party upon appointment as receiver. The stay grants FDIC an opportunity to familiarize itself with the suit and decide on a course of

action without materially inconveniencing the other parties.

*Marc Development,* 771 F.Supp. at 1168.

Reading paragraph (d)(13)(D) to bar the court's exercising subject matter jurisdiction prior to completion of the administrative claims process would effectively render paragraph (d)(5)(F) superfluous. *Marc Development,* 771 F.Supp. at 1167. The court cannot accept this result as it would violate the fundamental tenets of statutory interpretation. *See McCuin v. Secretary of Health and Human Services,* 817 F.2d 161 (1st Cir.1987) (court must interpret statutes in such a way that gives the statutory provisions a harmonious, comprehensive meaning and effect when possible); *United States v. Ven–Fuel, Inc.,* 758 F.2d 741 (1st Cir.1985) (statutes should not be interpreted in a way that renders the statutory words or phrases meaningless or superfluous); *Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir.1977) (courts have a duty to construe acts of Congress in such a manner as to give effect to all parts of the act).

Judge Anderson's interpretation of 12 U.S.C. § 1821(d) effectively resolves the conflict by utilizing the first two elements listed *supra,* that are needed to resolve the apparent conflict i.e., close scrutiny of the statutory language and recognition of the different effect the provisions have on a suit filed before appointment of the FDIC as receiver as opposed to the effect on a suit filed after appointment of the FDIC as receiver. Contrasting the FDIC's interpretation with Judge Anderson's in relation to the Act's legislative history further uncovers the weakness in FDIC's interpretation while sustaining Judge Anderson's interpretation.

The *Circle Industries* court decision relied upon by the FDIC states that "Congress intended that a district court not have subject matter jurisdiction of state law claims ... until those claims are first presented to and adjudicated by the RTC or FDIC." *Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank,* 749 F.Supp. 447, 454 (E.D.N.Y. 1990), *aff'd, Circle Industries, Division of Nastasi–White, Inc. v. City Federal Savings Bank,* 931 F.2d 7 (2nd Cir.1991). The House of Representatives stated that "[r]esort to either the District Courts or administrative process is available *only after* the claimant has first presented its claim to FDIC." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 418, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 214 (emphasis added). Reading this sentence alone, FDIC's interpretation appears to be correct. A more complete reading of the legislative history however, lends a different result. "There shall be no judicial review of the administrative determination not to allow a claim. Rather, the claimant must file suit or *continue* a previously filed suit to establish a disallowed claim." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 419, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 215 (emphasis added). This section of the house report indicates that Congress did take into account the situation where a lawsuit could be brought against a failing or failed institution prior to the filing of a claim with the FDIC as receiver. Section 1821(d)(5)(F)(ii) is Congress' manifested solution to this likely scenario. Lawsuits filed prior to the appointment of the FDIC as receiver shall not be prejudiced by the filing of a claim with a receiver. 12 U.S.C. § 1821(d)(5)(F)(ii). The inclusion of the phrase in paragraph (d)(6)(A)(ii) "or continue an action commenced before the appointment of the receiver" provides the necessary exception to the apparent lack of court jurisdiction created by paragraph (d)(6)(A) that allows the paragraph to have full effect without contradicting or nullifying paragraph (d)(5)(F)(ii). The cited language in paragraph (d)(6)(A) along with the exception language found in paragraph (d)(13)(D) enables the court to give full meaning to paragraph (d)(5)(F) which provides for the protection of suits brought prior to the appointment of the FDIC as receiver and at the same time enables the court to adhere to Congress' intent not to allow administrative rulings to be reviewable by the district courts. In sum, careful scrutiny of the words as chosen by Congress along with a thorough review of the legislative history text leads to the conclu-

sion that Congress enacted this legislation in such a way so that suits brought prior to appointment of the FDIC as receiver receive different treatment under the statutory provisions than suits brought subsequent to appointment of the FDIC as receiver. What also becomes apparent from a thorough reading of the legislative history is Congress' intent to create a consensual claims resolution scheme by making available to the claimant a multitude of procedural options via section (d). The third and final element needed to resolve the conflict.

Congress' grand scheme provides for a multifaceted claims resolution system that includes a "consensual administrative adjudication" procedure. H.R.Rep. No. 101–54(V), 101st Cong., 1st Sess. 12, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 405. The court interprets Congress' phraseology to mean that utilization of the administrative adjudication procedure is not mandatory or exclusive as interpreted by the FDIC. Rather, the administrative adjudication procedure is but one avenue authorized by Congress that can be followed if the claimant and the FDIC agree to pursue that particular claims resolution procedure. Further reading of the legislative history text confirms this conclusion. The House of Representatives' Judiciary Committee stated that:

> Subsection 212(5) ... provides for judicial review of decisions made under.... [the] rules and regulations only as this subsection itself provides; and if administrative adjudication is the *selected alternative*, the only judicial review available will be that provided by the [FDIC's] regulations.... [Subsection 212(5)] provides that after an initial decision on a claim, every claimant has the right to bring an action on the claim in a United States District Court. If there is no initial decision within 180 days, a claimant may file an action on that claim in the appropriate district court. However, the provision also gives claimants the *option*, instead of bringing an action on the initial decision in district court, of selecting a de novo consideration of the claim with an opportunity for a hearing on the record, i.e. pursuant to the Admin-

istrative Procedure Act, 5 U.S.C. 554. If the claimant selects this *option*, judicial review of the administrative determination will be pursuant to the Administrative Procedure Act, rather than de novo. In addition, the Corporation [FDIC] is directed to establish procedures for *alternative dispute resolution*, so that a *claimant may select* such procedures for review of the initial decision in lieu of a formal hearing, de novo, under the Administrative Procedure Act.

H.R.Rep. No. 101–54(V), 101st Cong., 1st Sess. 12, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 405 (emphasis added). As is clear from the legislative history, Congress has created a multifaceted approach which provides a claimant with a multitude of options in seeking to resolve disputes with depository institutions that have been succeeded by the FDIC.

In summary, the Congressional scheme as outlined, *supra,* provides a claimant initially with a duality of remedies when a lawsuit is filed prior to appointment of the FDIC as receiver. *Marc Development,* 771 F.Supp. at 1168. The claimant may pursue the court action simultaneously with the administrative claims resolution process. *Id.* The claimant may also choose the option to either pursue only the administrative claims process or only the court process. For suits filed after the FDIC has been appointed receiver, claimant must pursue the administrative claims resolution process. If the administrative claims procedure is followed and the claim is disallowed, Congress has provided the claimant with ample review procedures subject only to the approval of the interested parties. *See* 12 U.S.C. § 1821(d)(6)(A). By interpreting section 1821(d) to provide a dichotomy of claims resolution procedures activated by the timing of the lawsuit relative to the time the receiver is appointed, Congress' scheme for claims resolution can be implemented without sacrificing the meaning or effect of any enacted provision.

A further benefit is realized by adopting the interpretation advanced by Judge Anderson—a benefit that would be unreal-

ized if the FDIC interpretation were followed.

> Conceivably, an action that had been pursued for years and had been submitted for decision to a jury or judge would have to cease immediately upon appointment of the receiver because the court would be without subject matter jurisdiction.... In return for [the] lengthy delay [that would result from the use of the administrative procedures], the judicial system would receive only an administrative decision from the FDIC that does not bind the claimant. In effect, the statute would reach backward to deprive a court of established subject matter jurisdiction to permit the issuance of an advisory opinion by one of the parties.

*Marc Development,* 771 F.Supp. at 1169. Nothing in the statutory or legislative history evinces such a result.

■ FDIC's final argument is that dismissal will not create undue hardship since the case has not proceeded past the filing of the original writ. This argument no longer has any merit. The instant case has been consolidated with *FDIC v. Paul A. Grillo et al.,* Civ. No. 91–431–D in an order dated December 6, 1991. *See* Order of Consolidation doc. no. 10. The case with FDIC as plaintiff while in the state court proceeded further than the original writ. Thus undue hardship would result if the case were dismissed. Furthermore, hardship is not relevant when dealing with a fundamental issue such as subject matter jurisdiction which is dictated by statute and not subject to discretionary matters such as hardship arguments. *Cf. Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.1979) (There exist some recognized limitations on federal courts exercising jurisdiction, i.e., political question doctrine; none permit a court to exercise its own discretion on the subject); *Pari Mutuel Clerk's Union of LA. v. Fair Grounds Corp.,* 703 F.2d 913 (5th Cir.1983) (The courtroom door swings wide and won't be shut in a litigant's face unless the statute mandates such a result).

Finally, the court expresses its concern for the inherent injustice that results from interpreting the statute to allow removal of a case to a federal district court only to be followed by a motion to dismiss for lack of subject matter jurisdiction by the removing party. Again, nothing in the legislative record suggests such an unjust and illogical result that promotes the inefficient and abusive use of the federal court system. Accordingly, FDIC's motion to dismiss is denied. The FDIC may motion to stay for a period of 90 days pursuant to 12 U.S.C. § 1821(d)(12). However, the court will not grant this stay unless a formal request is filed by the FDIC.