The RESOLUTION TRUST
CORP., Plaintiff,

v.

Leonard S. ELMAN, Esq. and Berger, Steingut, Tarnoff & Stern,
Defendants.

No. 91 Civ. 987 (KMW).

United States District Court,
S.D. New York.

March 12, 1991.

Joseph J. Ortego, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y., for plaintiff.

Robert M. Bursky, Harvey Weinig, Berger, Steingut, Tarnoff & Stern, New York City, for defendants.

MEMORANDUM OPINION
AND ORDER

KIMBA M. WOOD, District Judge.

Plaintiff the Resolution Trust Corporation ("RTC") in its capacity as receiver and successor in interest to Central Federal Savings Bank, FSB ("Central Federal") brings this action by way of an order to show cause seeking an order from the court requiring defendants Leonard Elman and Berger, Steingut et al. (collectively "the Firm") to turn over files relating to defendant's representation of Central Federal before the RTC took over the bank as receiver. The firm cross-moves to dismiss

pursuant to F.R.Civ.P. 12(b)(7) or, alternatively to join Central Federal as an indispensable party pursuant to F.R.Civ.P. 19(a)(1).

### Facts

Defendants represented Central Federal for many years in a number of matters, primarily foreclosure actions. On December 7, 1990, the RTC informed the firm that Central Federal had been closed and that the Office of Thrift Supervision had appointed the RTC receiver for the bank. On December 20, 1990, the firm learned from the RTC that the RTC had retained new counsel to act on Central Federal's behalf and that the firm was being replaced in all actions in which it had represented Central Federal. At that time, the firm had 54 pending matters involving Central Federal. The RTC requested the firm to send its files on the pending Central Federal matters to the law firms that the RTC had hired to replace defendants. Defendants refused to comply with this request until their fees were paid, arguing that the files were subject to a common law retaining lien. Since that time the parties have attempted to resolve this billing dispute, albeit without success. The RTC claims that it needs the files to begin working on the pending foreclosure actions and that the continued delay on the part of the firm in turning over the necessary files only serves to reduce the chances of the bank's creditors (including the firm) ever receiving full payment. The firm responds that any delay is due largely to the RTC's own dilatory processing of the firm's submitted bills.

### Discussion

As a threshold matter, we address the question of subject matter jurisdiction. The court's jurisdiction to decide this matter rests on 12 U.S.C. § 1441a(*l*)(1), which provides that "any civil action, suit, or proceeding to which the Corporation[1] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding."

The firm asserts that two different liens protect its interests in receiving payment from the RTC. The first is statutory in nature, and gives the attorney who appears for a party a lien on his client's cause of action that attaches to any judgment the client may obtain. N.Y.Jud.Law § 475 (McKinney 1983). The second type of lien the firm claims, and the more important for purposes of this action, is the retaining lien. This lien exists at common law and aims at preventing a client from failing to pay the fees he owes for services rendered. *People v. Keeffe*, 50 N.Y.2d 149, 428 N.Y. S.2d 446, 449, 405 N.E.2d 1012 (1980). The lien entitles the attorney to retain all files and papers in his possession involving the attorney's representation of the client until the client has paid its account in full. *Id.; Trendi Sportswear, Inc. v. Air France*, 146 Misc.2d 111, 549 N.Y.S.2d 561, 562 (N.Y.Civ.Ct.1989). It is dependent only upon the attorney's continued possession of those files. New York courts have repeatedly recognized the common law retaining lien and held that a court may not force an attorney to turn over client files held as security for payment of a justly assessed fee without determining the value of the attorney's fee and ensuring that the client either pays the fee or posts adequate security. *E.g., Yaron v. Yaron*, 58 A.D.2d 752, 396 N.Y.S.2d 225, 226 (1st Dep't 1977); *Artim v. Artim*, 109 A.D.2d 811, 486 N.Y. S.2d 328, 329 (2d Dep't 1985); *The Mint Factors v. Cedar Tide Corp.*, 133 A.D.2d 222, 519 N.Y.S.2d 27, 28 (2d Dep't 1987).

Here, there is little doubt that the firm has a valid retaining lien on the Central Federal files in its possession. If this case involved the typical scenario in which the issue of a retaining lien arises, one involving two private parties and in which a client changed counsel before the end of litigation, the court's role would be straightforward and its conclusion different. The presence of the RTC as a party, however, and the fact that Congress has established an intricate framework within which the RTC must operate in resolving the affairs of insolvent banks like Central

---

**1.** This provision is made applicable to the RTC by 12 U.S.C.A. § 1441a(b)(4) (Supp.1990).

Federal distinguishes this case from those defendants rely upon.

As Judge Spatt recently wrote, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C.A. § 1821(d), "provides a detailed regulatory framework so as to restore the financial integrity of the thrift industry's deposit insurance fund and to 'provide funds from public and private sources to deal expeditiously with failed depository institutions.'" *Circle Industries v. City Federal Savings Bank,* 749 F.Supp. 447, 451 (E.D.N.Y.1990) (quoting P.L. 101–73, 103 Stat. 183, § 101(8)). To further this stated goal, FIRREA established an administrative mechanism for adjudicating claims. 12 U.S.C.A. §§ 1821(d)(5)–(14). Pursuant to this statutory mechanism, the RTC, in its role as receiver for a failed bank, may accept or reject all or part of a claim. *Id.* at § 1821(d)(5)(D). If the claimant is unhappy with the outcome of the initial claim review procedure, she may request either an administrative review in accordance with the statute, or file suit on that claim and obtain a de novo judicial review of the RTC's initial determination. *Id.* at § (d)(6). In addition, the statute provides for expedited determination of claims by the RTC in certain instances. *Id.* at (d)(8).

In its papers, the firm focuses largely on the state law applicable to attorney's liens. The firm contends that the court cannot order it to transfer its files without first requiring payment of its fees or posting of a bond, as the New York courts have repeatedly held in the private litigation context. Following the procedures outlined in these New York cases would require some type of inquiry by the court into the value of the services the firm provided to Central Federal and the RTC; in essence, the court would have to ascertain the value of the firm's claim. The problem with applying this procedure to the RTC in this case is that the claim adjudication process Congress erected in FIRREA is exclusive. As the statute makes clear,

> no court shall have jurisdiction over—(i) any claim or action for payment from, or any action seeking a determination of

rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the [RTC] may acquire from itself as such receiver.

12 U.S.C.A. § 1821(d)(13)(D)(i). The statutory claim process is mandatory for all creditors of insolvent banks. *Circle Industries,* 749 F.Supp. at 455. The statute does not grant a right to bypass this administrative claim mechanism to any specific group of creditors. The firm has submitted its claim to the RTC. Until that process has run its course, this court cannot rule on defendant's claim for fees.

The RTC relies heavily on a recent decision by Judge Debevoise in the District of New Jersey, *FDIC v. Shain, Schaffer & Rafanello,* Civil No. 91–177, tr. of oral op. (D.N.J. January 18, 1991), to bolster its attempt to compel the firm to turn over its files. In *Shain,* the FDIC, like plaintiff in this case, sought return of legal files from a law firm that had performed legal services for a bank for which the FDIC had been appointed receiver. As in this case, the lawyers asserting the lien in *Shain* had submitted their bills to the agency's administrative review process. Judge Debevoise acknowledged that the firm had a retaining lien on the relevant files, but ordered the firm to turn over the relevant legal files to the FDIC nonetheless, in spite of that lien. The court held that because the papers sought by the FDIC had no inherent value, the indebtedness of the law firm to the bank should be viewed as a general creditor's claim and not a secured claim. *Id.* at 45–46. Based on this classification of the law firm's claim, the court found that to allow the law firm "to receive payment in full at this time would put it in a position vis-a-vis other creditors which the statute does not contemplate." In supplemental papers, the firm argues that it stands in a different position than the law firm creditor in *Shain,* and that this difference renders the *Shain* holding inapposite here. Unlike the situation with the law firm in *Shain,* defendants point out, defendants in this case have in their possession sufficient bank funds to satisfy the firm's claim

against the bank.[2] The retention of these funds means that the firm is now a secured creditor to the full extent of the amounts owed to it. The firm contends that as a result, the rationale that the *Shain* decision relies upon does not apply to this case—the firm does not obtain an unfair advantage over other creditors if it is paid out of the monies in its possession.

As the RTC's supplemental papers point out, the question of whether the firm's retaining lien attaches to the bank funds in the firm's possession is more complicated than the firm suggests. According to the RTC, the firm holds Central Federal monies only in escrow. Supplemental Affidavit of Raymond Sullivan at ¶ 5. It is not clear whether the firm's retaining lien attaches to such funds. This question, however, is not before the court, and its resolution is not essential to the court's decision. Even assuming arguendo that the firm's possession of money held in escrow for Central Federal renders the firm a secured creditor, thus distinguishing the facts of this case from the situation in *Shain*, the distinction is not dispositive. Judge Debevoise's holding in *Shain* does not rely solely on the unfairness of giving the law firm priority over other creditors in a situation where the insolvent bank is unlikely to be able to pay all of its creditors. Rather, underlying the entire decision is the notion that whatever the ultimate fate of the law firm's claims, those claims must be addressed in the context of the claims procedure established by statute. *See Shain*, tr. of oral op. at 45–48. The firm's retaining lien may indeed place it in a better position than other Central Federal creditors. The proper forum for the firm to make this argument, at least in the first instance, is before the RTC and in accordance with its regulations.[3]

The final question for this court to address is that of the proper relief. Under New York law, a court may order an attorney to turn over client files as part of its inherent power to control its own officers and as part of its power to compel attorneys to act equitably and fairly towards their clients. *Shatzkin v. Shahmoon*, 19 A.D.2d 658, 242 N.Y.S.2d 72 (2d Dep't 1963). Here, the RTC seeks to invoke this authority in the form of an order of replevin from the court to compel the firm to turn over the files relevant to the Central Federal foreclosure actions. Although plaintiff points to one case in which a court used this remedy for the purpose sought by plaintiff, the court is not convinced that replevin is the proper remedy here. Nevertheless, in moving for an order of replevin, the RTC has invoked this court's equitable power. Sitting as a court of equity, this court has broad discretion to fashion an appropriate remedy. *See Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."). In *Shain*, plaintiff sought the return of client files by way of a preliminary injunction. Judge Debevoise granted that request. Although neither party has briefed the issue, the court finds that a preliminary injunction would be the appropriate remedy in this case as well.

The standard for obtaining a preliminary injunction in this Circuit is well known.[4] The party seeking a preliminary injunction must establish (1) irreparable

---

**2.** The court notes that the firm raised the issue of the Central Federal funds in its possession for the first time in its supplemental papers filed two weeks after the initial order to show cause, and 12 days after the firm filed its response papers.

**3.** In fact, FIRREA includes an explicit provision for expedited relief in the case of claimants who:

(i) allege the existence of legally valid and enforceable or perfected security interests in assets of any depository institution for which

the [RTC] has been appointed receiver[.] 12 U.S.C.A. § 1821(d)(8)(A)(i).

**4.** Although the RTC urges this court to apply the test outlined by Judge Debevoise in *Shain* to this case, that standard is the one used by the Third Circuit. Obviously, this court is bound by Second Circuit precedent which employs a somewhat different standard. *Compare, e.g., United States v. Price*, 688 F.2d 204, 211 (3d Cir.1982) *with Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them a fair ground for litigation, plus a balance of hardships tipping decidedly in favor of his claim. *See, e.g., Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *Plaza Health Laboratories v. Perales,* 878 F.2d 577, 580 (2d Cir.1989). In addition to these general considerations guiding a court's decision to grant a preliminary injunction, the Second Circuit has suggested that a trial court should employ slightly different standards in certain limited circumstances. The Second Circuit, for example, recently pointed out that it has never applied the looser "serious questions on the merits" test to a preliminary injunction sought by any government agency. *SEC v. Unifund SAL,* 910 F.2d 1028, 1039–40 (2d Cir.1990). Without the aid of briefing or argument regarding the status of the RTC when it acts as a receiver, the court finds that the stricter "likelihood of success" test is appropriate.

 Applying this standard to the facts of this case, the court finds that the RTC has clearly shown that it will suffer irreparable harm without prompt access to the records and files held by the firm. The RTC is charged by statute with protecting the interests of the institution for which it acts as receiver. To accomplish this end, Congress granted to the RTC "all rights, titles, powers and privileges of the insured depository institution ... with respect to the institution and the assets of the institution." 12 U.S.C.A. § 1821(d)(2)(A)(i) (1989). The 54 foreclosure actions in which the firm formerly represented Central Federal are clearly assets of the bank. Without access to the firm's files in these matters, the RTC cannot be expected to carry out its responsibilities in vigorously pursuing these pending matters. Indeed, without access to the files the RTC cannot even determine the status of pending matters. Continued delay in receiving access to the files may diminish the final recovery the RTC can obtain for Central Federal's creditors by preventing the RTC from taking necessary action to protect certain assets.

This harm that will result from continued delay will only become more serious with time. The reasoning the court in *Shain* applied to the FDIC in that case, applies with equal force to the RTC here: "the [RTC] is performing a public function, doing the best it can for the benefit of the depositors primarily, and also for creditors to the extent that it can. In this situation arising from the insolvency of the bank, the [RTC] would be completely hamstrung in its efforts to fulfill these responsibilities if it doesn't have access to the records of the bank itself." *Shain,* tr. of oral op. at 47.

It is similarly clear from the above discussion that the RTC has demonstrated that it will likely succeed on the merits, the second prong of the test for a preliminary injunction. Congress has established a comprehensive scheme for dealing with the adjudication of the claims of creditors of insolvent financial institutions. Courts have found that Congress intended for this remedy to be mandatory. Accordingly, defendants must first pursue their claim within this context before seeking a determination of the RTC's liability from this court. Until the firm has pursued these prescribed procedures, the court has no jurisdiction to set its fee.

The obligation of the party seeking a preliminary injunction to make a persuasive showing of likelihood of success on the merits increases in proportion to the burden the requested relief would place on the non-moving party. *SEC v. Unifund SAL,* 910 F.2d at 1039. An order compelling the firm to surrender its files relating to the pending matters on which it represented Central Federal will not unduly burden the defendants. If the firm's arguments regarding the bank funds in its possession are correct, the firm has retained possession of enough of the bank's funds to secure the entire amount of the bank's debt, and the need for the security provided by continued possession of the files diminishes. If defendants' arguments about its right to retain the bank funds in its possession prove incorrect, the firm is in no worse a position than any other creditor of Cen-

tral Federal if it relinquishes the files. In light of this burden, the RTC's showing of likelihood of success on the merits is adequate. Additionally, whatever burden loss of the files might cause is more than outweighed by the "overwhelming public interest" in allowing the RTC "to proceed rapidly and expeditiously in cleaning up the affairs of the bank, and every other bank which it unfortunately has to administer.... [The government has] limited public resources to perform the functions which have to be performed, and from the public's perspective every assistance should be provided to the performance of these duties. The assistance in this case is in the form of the attorney's records." *FDIC v. Shain, Schaffer & Rafanello*, tr. of oral op. at 47–48.

Plaintiff has clearly shown that it is entitled to a preliminary injunction requiring the firm to turn over the files in its possession relating to pending matters in which the firm formerly represented Central Federal.

### Conclusion

For the reasons set forth above, the court treats plaintiff's request for an order of replevin as a motion for a preliminary injunction, and grants plaintiff's request for an order compelling the firm to turn over the relevant files to plaintiff. Defendants' cross-motion is hereby dismissed. The parties shall prepare an order for the court's approval providing for immediate release of the relevant files to plaintiff.

SO ORDERED.