**UNITED STATES of America, Plaintiff,**

v.

**Mikal Eugene ALTMAN and Marsha M. Altman, Defendants,**

**Gerald James McNaughton, III and Sally Spainhour McNaughton, Defendants and Third–Party Plaintiffs,**

**Elwin J. Williams and Mary Ellen Jordan Williams, Defendants and Third–Party Plaintiffs,**

**Resolution Trust Corporation, an Agency of the United States, Third–Party Defendants.**

**Civ. A. No. J90–0482(B).**

United States District Court, S.D. Mississippi, Jackson Division.

April 24, 1991.

Office of U.S. Atty., Jackson, Miss., for U.S. and Resolution Trust Corp.

J. Fred Spencer, Jr., George R. Fair, Watkins & Eager, Jackson, Miss., for Resolution Trust Corp.

Erwin C. Ward, Stennett Wilkinson Ward, Jackson, Miss., for McNaughtons.

K.F. Boackle, Jackson, Miss., for Williams.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the Motions of Resolution Trust Corporation to Dismiss the Third–Party Complaints filed against it by Gerald James McNaughton, III and Sally Spainhour McNaughton and by Elwin J. Williams and Mary Ellen Jordan Williams for lack of subject matter jurisdiction. All Third–Party Plaintiffs have responded to the Motions. The Court, having considered the Motions and Responses, together with memoranda of authorities and attachments thereto, now renders the following findings of fact and conclusions of law.

## I. FACTS AND PROCEDURAL HISTORY

On February 21, 1972, Defendants and Third–Party Plaintiffs Elwin Williams and Mary Ellen Jordan Williams ("the Williams") executed a deed of trust on Lot 36, River Oak Subdivision, in Hinds County, Mississippi ("Lot 36"), in favor of Bridges Loan Investment Company, Inc. ("Bridges") in order to secure a promissory note for $23,400.00. That deed of trust was assigned to First Federal Savings and Loan Association of Clearwater ("First Federal of Clearwater") on March 14, 1972.

On October 10, 1979, the Williams obtained a loan from the Small Business Administration ("SBA") for $20,000.00. To secure that loan, the Williams executed a second deed of trust on Lot 36 in favor of the SBA.

On July 10, 1981, the Williams sold Lot 36 to Defendants and Third–Party Plaintiffs Gerald James McNaughton, III and Sally Spainhour McNaughton ("the McNaughtons"). As part of that transaction, the McNaughtons agreed to assume the loan obligations to First Federal of Clearwater and to the SBA, but the Williams were not discharged from their

own liability on the notes. As an additional part of the sales transaction, the McNaughtons executed a third deed of trust on Lot 36 in favor of Jackson Federal Savings and Loan Association, a successor in interest to First Jackson Savings Bank ("First Jackson"). While the deed of trust executed in favor of First Jackson indicated that it secured a debt of $36,900.00, the McNaughtons assert that the deed of trust was "all inclusive." Thus, of the $36,900.00 reflected on the note, the McNaughtons contend that $20,379.00 constituted the unpaid balance due on the original deed of trust in favor of First Federal of Clearwater and only $16,320.00 was actual new money advanced by First Jackson.

By agreement entered August 28, 1981, the SBA agreed to subordinate its second mortgage position to First Jackson. Thus, while the First Federal of Clearwater deed of trust retained first priority, First Jackson then held the second mortgage on the property, and the SBA held a third mortgage position.

On November 19, 1982, the McNaughtons sold their home to Defendants Mikal Eugene Altman and Marsha M. Altman. The Altmans agreed to assume all loan obligations that were secured by deeds of trust on the property, but the Williams and McNaughtons were not released from their liability on those notes.

In December of 1988, the Williams and McNaughtons were notified that the Altmans had defaulted on the SBA loan that was secured by a deed of trust on Lot 36. It is also evident from the record that, at some point in time proximate to the default on the SBA loan, the Altmans defaulted on the loan that was outstanding to First Jackson. Accordingly, on May 30, 1989, First Jackson foreclosed on its deed of trust on Lot 36. At the Substituted Trustee's foreclosure sale, First Jackson purchased Lot 36 for $33,500.00, still subject to the first deed of trust in favor of First Federal of Clearwater.

Following the foreclosure on the First Jackson deed of trust on Lot 36, the McNaughtons sent a response to a SBA letter demanding payment on its defaulted note and asked the SBA to institute legal action against the Altmans as the parties primarily liable on the indebtedness.

On June 29, 1990, First Jackson was declared insolvent by the Director of the Office of Thrift Supervision, and Resolution Trust Corporation ("RTC") was appointed receiver of First Jackson. On July 9, 1990, the initial notice to creditors of First Jackson was published, notifying all parties with claims against First Jackson that such claims must be presented to RTC for consideration by October 9, 1990.

On September 24, 1990, the United States of America, on behalf of the SBA, filed the instant lawsuit. In the suit, Plaintiff seeks to recover the outstanding balance on the SBA note, approximately $12,950.30, plus interest. In the suit, Plaintiff named the Altmans, the McNaughtons, and the Williams as Defendants. In their Answers to the Complaint, both the Williams and the McNaughtons assert that they are relieved of liability because of the failure of the SBA to proceed against the Altmans in a timely manner and because they were not notified of the foreclosure sale by either the SBA or First Jackson. The Williams and McNaughtons also assert that they are relieved of liability because of the failure of the SBA to secure payment of the debt from the surplus funds that were generated by the foreclosure sale of the property. Defendants maintain that the First Jackson Deed of Trust actually represented an advance of only $16,320.00 in new funds and that any funds secured by the sale of the property that were not used to retire the First Jackson debt and pay the reasonable costs and expenses of foreclosure should have been used to pay off the SBA loan which was subordinate to the First Jackson loan. Because the property was sold for $33,500.00 at the foreclosure sale and the indebtedness to First Jackson at that time was less than $15,000.00, Defendants assert that a surplus of nearly $19,000.00 dollars existed from which the SBA indebtedness of $12,000.00 could have been paid. Defendants maintain that the SBA had a legal right and a fiduciary obligation to Defendants to se-

cure payment of the debt from the funds held by First Jackson and that the failure of the SBA to take any action in this regard constitutes a breach of its fiduciary duty to Defendants and relieves Defendants of any liability they may have on the loan.

Following their Answers to the Complaint, both the McNaughtons and the Williams filed Third–Party Complaints against RTC which are the subjects of these Motions to Dismiss. In their Third–Party Complaint, the McNaughtons seek a judgment ordering RTC to pay to the SBA such surplus foreclosure proceeds as may be necessary and available to satisfy the SBA indebtedness. The McNaughtons also assert that they are entitled to recover some interest payments they made on the First Jackson loan because of usurious rates that were applied to the part of the loan representing the first mortgage held by First Federal of Clearwater. In their Third–Party Complaint, the Williams assert that they are entitled to a judgment against RTC for all sums that they may ultimately be required to pay to the SBA.

## II. ANALYSIS

This Court now considers the Motions to Dismiss that have been filed by the Third–Party Defendant, RTC. In the Motions, RTC asserts that, pursuant to 12 U.S.C. § 1821(d)(13)(D), this Court lacks subject matter jurisdiction to hear any claims asserted by the McNaughtons and the Williams against RTC because these parties have failed to exhaust administrative procedures for asserting claims against RTC as set forth in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(d).

### A. Exhaustion of Administrative Procedures

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") was enacted in 1989 "to put the Federal deposit insurance funds on a sound financial footing for the future" and "to provide funds from public and private sources to deal expeditiously with failed financial institutions." H.R.Conf.Rep. No.

101–222, 101st Cong. 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 432. To further these purposes, FIRREA established an administrative claims procedure whereby any person having a claim against a failed banking institution is required to submit the claim to the appropriate regulatory agency for consideration. Where, as in the instant case, RTC has been appointed as receiver of a failed thrift institution, RTC must publish a notice to the institution's creditors, informing them that they have at least ninety days from the first publication of notice to present their claims against the assets of the failed institution. 12 U.S.C. § 1821(d)(3). Once a creditor's claim has been presented, RTC has 180 days within which to consider the claim and notify the claimant of whether the claim has been allowed or disallowed. 12 U.S.C. § 1821(d)(5). When the claimant has been notified of RTC's determination of the claim or, in any event, when the 180 day period for determination of the claim has expired, the creditor may either request an administrative review of the claim or file suit on the claim in the federal district court wherein the failed institution's principal place of business is located. 12 U.S.C. § 1821(d)(6).

Not only does FIRREA establish the procedures noted above for the determination of claims by RTC, it also expressly limits a claimant's ability to present claims in any manner other than that specifically provided for under the Act. While section 1821(d)(6) clearly envisions the presentation of claims for RTC determination prior to the institution of a suit in federal court, other provisions of FIRREA leave no doubt that compliance with the statutorily prescribed procedures is a mandatory prerequisite to maintenance of a federal suit.

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [Resolution Trust] Corporation has been appointed receiver, in-

cluding assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

In the instant action, the McNaughtons and the Williams admit that they did not pursue their claims through FIRREA procedures prior to filing the Third–Party Complaints. On this basis, RTC asks this Court to dismiss the Third–Party Complaints for lack of subject matter jurisdiction.

Other jurisdictions that have considered the nature of the claims procedures established under FIRREA have uniformly concluded that compliance with FIRREA procedures is mandatory and that the statutory procedures must be exhausted before a federal district court has jurisdiction to hear a claims controversy. *See Rexam Ltd. Partnership v. Resolution Trust Corporation,* 754 F.Supp. 245, 246 (D.Puerto Rico 1990) (administrative procedures provided under FIRREA must be exhausted before district court can exercise subject matter jurisdiction over claim); *Circle Industries, Div. of Nastasi–White, Inc. v. City Federal Savings Bank,* 749 F.Supp. 447, 454–55 (E.D.N.Y.1990) (district court does not have subject matter jurisdiction over claims asserted against RTC until those claims have been presented to and adjudicated by RTC); *Tuxedo Beach Club Corp. v. City Federal Savings Bank,* 737 F.Supp. 18, 19 (D.N.J.1990) (FIRREA requires creditors to process claims through RTC administrative channels before a judicial action can be maintained).

■ The McNaughtons and the Williams do not dispute that FIRREA procedures must be exhausted prior to filing suit against RTC. They do contend, however, that a different rule applies where the claims asserted against RTC are raised by a third-party complaint. Because the McNaughtons and the Williams were named as defendants in the Complaint filed by the SBA and thereafter, as a necessary measure to protect their substantive rights

in the action pending against them, filed Third–Party Complaints against RTC, they assert that ancillary jurisdiction automatically attached to the Third–Party Complaints filed against RTC. In support of this proposition, the McNaughtons and the Williams note that all cases cited by RTC in which procedural exhaustion has been required involved direct actions against RTC rather than third-party complaints. In addition, these parties note other federal enactments which establish administrative procedures similar to FIRREA, yet which do not require procedural exhaustion as a precondition for federal court jurisdiction over a third-party complaint. Specific attention is called to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* which, like FIRREA, requires a claimant to exhaust all administrative procedures before the claimant can file suit in federal court. Significantly, however, FTCA expressly excepts from this general rule a variety of claims that may be asserted by means other than an original complaint.

The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third-party complaint, cross-claim or counter-claim.

28 U.S.C. § 2675. Because FTCA and FIRREA are procedurally similar in most respects and because third-party complaints fall within the ancillary jurisdiction of the court under FTCA, the McNaughtons and the Williams urge this Court to extend ancillary jurisdiction to third-party complaints asserting claims against RTC where the procedural requirements of FIRREA have not been met.

Upon consideration of relevant legal authority, the Court concludes that claims asserted against RTC that fall within the scope of section 1821(d)(13)(D) must comply with the procedural requirements of FIRREA and cannot fall within the ancillary jurisdiction of the Court merely because they are asserted in a third-party complaint. The Court finds unpersuasive the argument that third-party complaints under FIRREA should be treated like third-party complaints under other federal acts,

such as FTCA, which allow third-party claims to proceed despite a failure to comply with the statutory procedures. The Court notes that FTCA expressly provides that the general requirement of procedural exhaustion does not apply to claims asserted by a third-party complaint. FIRREA contains no such exception. Clearly, had Congress intended that third-party claims against RTC be exempt from the exhaustion requirement of FIRREA, it would have provided such an exception in the Act as it did in FTCA. The Court further finds that this conclusion is well supported by the legislative history of FIRREA. The House report accompanying passage of FIRREA clearly states that only "[a]fter exhaustion of streamlined administrative procedures, a claimant has a choice to ... bring the claim de novo in the District Court." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin. News 214. "Resort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC." *Id.* "[E]xhaustion is a proper prerequisite to further action by a claimant." *Id.* at 215.

Accordingly, the Court concludes that, because the McNaughtons and the Williams did not pursue their claims against RTC through the administrative procedures prescribed by FIRREA prior to filing Third–Party Complaints against RTC, this Court is without subject matter jurisdiction to hear the claims pursuant to 12 U.S.C. § 1821(d)(13)(D).

### B. Third–Party Plaintiffs' Motions for Leave to File a Motion to Stay Proceedings

In addition to responding to the Motions to Dismiss, the McNaughtons and the Williams have asked that, in the event that RTC's Motions are found to be well taken, the Court delay dismissing the Third–Party Complaints and instead grant the Third–Party Plaintiffs leave to file a Motion to Stay Proceedings in the instant action pending disposition of any collateral administrative proceedings that might be required under FIRREA. In this regard, the Court notes that actions against RTC have been stayed in other jurisdictions in order to allow the exhaustion of administrative procedures to proceed. *See Rexam Limited Partnership v. Resolution Trust Corp.*, 754 F.Supp. at 246; *Tuxedo Beach Club Corp. v. City Federal Savings Bank*, 737 F.Supp. at 20. However, the McNaughtons and the Williams have failed to place before this Court any evidence that a stay of this action pending possible FIRREA procedures would be of any benefit to the parties, the Court, or in the interests of justice. Particularly, the Court notes that the ninety day period set by 12 U.S.C. § 1821(d)(3) for filing claims with the RTC has long since passed with no such action having been taken by the Third–Party Plaintiffs. These parties have further failed to present to the Court any evidence that would suggest that their claims might fall within the exception to the ninety day rule as provided by 12 U.S.C. § 1821(d)(5)(C)(ii). On this basis, the Court can only conclude that the McNaughtons and the Williams no longer have an opportunity to present their claims to RTC or to avail themselves of the administrative procedures established by FIRREA. Consequently, the Court finds that a stay of the present action to allow the Third–Party Plaintiffs to pursue such a futile course of action would serve no proper purpose. Accordingly, Third–Party Plaintiffs' Motions for Leave to File a Motion to Stay Proceedings is denied.

IT IS THEREFORE ORDERED that the Motions of Third–Party Defendant RTC to Dismiss for lack of subject matter jurisdiction are hereby granted and that all claims asserted against RTC by Third–Party Plaintiffs the McNaughtons and the Williams are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that the Motions of Third–Party Plaintiffs the McNaughtons and the Williams for Leave to File a Motion to Stay Proceedings is hereby denied.

SO ORDERED.