In the Matter of AMERICAN MORT-
GAGE AND INVESTMENT SER-
VICES, INC., et al., Debtors.

AMSAVE CREDIT CORPORATION,
Plaintiff,

v.

RESOLUTION TRUST CORPORATION,
as Receiver for Ensign Bank, F.S.B., in
Receivership; Barry Frost, Esq., Trust-
ee for American Mortgage and Invest-
ment Services, Inc.,; General Home
Services, Inc., General Home Financial
Services, Inc., American General Ser-
vicing, Inc., and First National Manage-
ment Corp., Debtors, Defendants.

Bankruptcy No. 91–33386.
Adv. No. 91–3611.

United States Bankruptcy Court,
D. New Jersey.

June 26, 1992.

Paul R. Defilippo, Crummy, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, N.J., for Amsave Credit Corp.

Michael M. Moriarty, Windels, Marx, Davies & Ives, New York City, for Resolution Trust Corp., as Receiver of Ensign Federal Sav. Bank.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

## INTRODUCTION

This matter comes before the court on a motion for summary judgment by the Resolution Trust Corporation ("RTC") as receiver for Ensign Federal Savings Bank ("Ensign II"), one of the defendants in this action. The plaintiff, Amsave Credit Corporation ("Amsave") seeks a determination of the extent and validity of its liens against debtors and also requests a determination of the priority of such liens. Amsave and the RTC each assert such a priority. Except as set forth below, this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

## STATEMENT OF FACTS

On August 31, 1990, the Office of Thrift Supervision of the United States Department of Treasury ("OTS") appointed the Resolution Trust Corporation receiver for Ensign Bank, F.S.B. ("Ensign I"). On that same date, the RTC, as receiver of Ensign I, was granted a charter to organize a new federal mutual savings bank, Ensign Federal Savings Bank ("Ensign II"), which was authorized to take over the assets and certain liabilities of Ensign I. Additionally, on that date, the OTS appointed the RTC conservator of Ensign II.

Previously, on or about October 28, 1986, Ensign I had entered into separate purchase and sale agreements with debtors American Mortgage and Investment Services ("AMI") and General Home Financial Services, Inc. ("GHFS") (collectively "debtors").[1] Pursuant to these agreements, Ensign I agreed to purchase mortgage obligations and retail home improvement installment obligations from debtors. The debtors agreed to hold in trust, for the benefit of Ensign I certain documents relating to the mortgage and home improvement obligations. Prior to the bankruptcy, over a period of time, approximately 2800 loans were purchased from debtors by Ensign I.[2] No indication of assignment or transfer of the documents was made of

---

1. Prior to the petition, the debtors were engaged in the lending and finance business, in large part, using funds borrowed from other institutional lenders.

2. The RTC states that books and records of Ensign I indicate that from the period of February 1989 to September 1990, Ensign I purchased 552 mortgage loans from AMI pursuant to the agreement. As of July, 1991, 398 of the 552

record. The sole basis of the RTC's alleged ownership is the RTC's assertion that these loans were among the assets transferred to it on August 31, 1990, when it was appointed receiver of Ensign I and the federally chartered bank, Ensign II was formed.[3]

On or about October 27, 1989, a series of loan documents were entered into between Amsave, as lender, and AMI, GHFS, and General Home Services, Inc. ("GHS"), another related debtor. Pursuant to the loan documents, Amsave extended credit or made financial accommodations to the debtors, and as collateral, the debtors granted Amsave liens and security interests in or to certain assets and property. Amsave perfected its security interest on November 6, 1989.[4]

On June 14, 1991, American Mortgage and Investment Services, Inc., General Home Services, Inc., and First National Management Corporation, as well as two other related corporations filed petitions for relief under Chapter 7 of the Bankruptcy Code.[5] On June 24, 1991, Amsave moved to lift the automatic stay to, among other things, take possession of certain assets or property of the debtors in which it claimed a security interest. The RTC asserted that Ensign I had an ownership interest in each of the 2800 loans including the 34 loans at issue. Although no objection was filed by the RTC in response to the original motion, on July 11, 1991, both Amsave and the RTC stipulated to adjourn Amsave's motion to vacate the stay, agreeing that until adjudication by the court, the stay was to remain in effect with respect to the 34 loans.[6]

On July 19, 1991, the Director of the OTS appointed the RTC as receiver of Ensign II. As receiver, the RTC succeeded to certain rights, titles, and privileges of Ensign II pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"),[7] 12 U.S.C. § 1821(d)(2)(B), as made applicable to the RTC by 12 U.S.C. § 1441a(b)(4).[8] Consequently, on July 24, 1991, the RTC published a notice to all creditors of Ensign II stating that all persons having claims

---

loans purchased remained open. Furthermore, RTC states the during the period of November 1986 to November 1990, Ensign I purchased a total of 3,674 home improvement loans from GHFS pursuant to the agreement. Of these 3,674 loans, 1,390 have been repaid, sold or collection efforts were commenced. Amsave is asserting an interest in 34 of the loans Ensign I purchased from GHFS. (Supplemental Memorandum of Law in Support of the RTC's Motion to Dismiss Amsave's Complaint for Lack of Subject Matter Jurisdiction, p. 2–3).

**3.** Evidence of transfer of assets may not be necessary. Pursuant to 12 U.S.C. § 1821(d)(2)(A), once appointed receiver or conservator of a failed depository institution, the RTC shall,

as conservator or receiver, and by operation of law, succeed to—

(i) all rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

**4.** Amsave states that it perfected its interest in the collateral by possession (the original pledged contracts were delivered to NCNB Tex-

as National Bank) and by the filing of UCC–1 Financing Statements with the New Jersey Secretary of State on November 6, 1989, bearing record number 1301664. (Plaintiff's Objection to Motion of Resolution Trust Corporation to Dismiss Adversary Complaint, ¶ 5–8).

**5.** All the cases of the debtor corporations were administratively consolidated by order of this court dated July 22, 1991.

**6.** While the original motion was unopposed, in the RTC's Memorandum of Law in Support of its motion to dismiss the complaint, the RTC states that it objected to the motion for relief on the grounds that Amsave's motion asserted a security interest in 34 of the 2800 loans Ensign I purchased pursuant to the Purchase and Sale Agreement.

**7.** P.L. 101–73, 103 Stat. 183 § 101[8]. FIRREA consists of sections scattered throughout Title 12 of the United States Code. The pertinent sections for purposes of this opinion are found in 12 U.S.C. §§ 1441a and 1821.

**8.** 12 U.S.C. § 1441a(b) establishes the RTC as a government corporation. § 1441a(b)(4) provides that with certain exceptions, the RTC shall have the same powers and rights to carry out its duties with respect to failed depository institutions as does the FDIC.

against Ensign II must present their claims to RTC within 90 days, pursuant to 12 U.S.C. §§ 1821(d)(6) and (7).[9] Additionally, by letter dated July 24, 1991, the RTC notified Amsave's counsel that Ensign II had been placed in receivership.

As permitted by 12 U.S.C. § 1821(d)(12), the RTC sought a 90 day stay of all proceedings against Ensign II in order to permit an orderly transition to receivership. The order granting the stay was signed by this court on July 26, 1991. On or about August 2, 1991, the RTC moved for relief from the automatic stay to, *inter alia*, permit it to appoint a servicing agent for the 2800 loans. Amsave opposed the motion with respect to its effect on the 34 loans. The RTC and Amsave could not reach an agreement with respect to these loans, whereupon the RTC consented to the withdrawal of the portion of the motion regarding the 34 loans in dispute.

Amsave filed the within adversary proceeding on September 12, 1991, to determine the extent and validity of its lien on the 34 loans at issue. The complaint demands judgment against both the RTC and debtors. Count I of the complaint demands a determination that Amsave has a valid and duly perfected security interest in the loans at issue and also seeks a determination as to the extent and validity of Amsave's lien. Count II of the complaint demands a judgment determining that Amsave's security interest in the loans is senior to any lien claimed by the RTC. The RTC's motion for summary judgment is presently before the court.

## QUESTIONS PRESENTED

1. Whether the administrative claims procedure of FIRREA is applicable in a case involving claims to property interests of a debtor-in-possession.

2. If so, whether this court has jurisdiction to determine the extent and va-

lidity of liens with respect to that property.

## POSITIONS OF THE PARTIES

The RTC argues that Amsave's failure to present its claim to the RTC under the procedures established in FIRREA precludes this court from hearing Amsave's complaint due to a lack of subject matter jurisdiction.

Amsave, on the other hand, asserts that the RTC's argument that the Bankruptcy Court lacks jurisdiction over the instant adversary proceeding is defective and must fail for two reasons. First, Amsave argues that it filed a Proof of Claim with the RTC on October 22, 1991, with respect to its rights to the 34 contracts at issue. Second, Amsave argues that the RTC has failed to demonstrate that it has ownership or any other interest in the 34 contracts at issue, therefore, the contracts are property of the debtors' estates for which the RTC has never obtained relief from the stay or a judicial determination that it holds an interest therein. Furthermore, Amsave asserts that FIRREA *presumes* that the disputed assets are assets of a failed depository institution for which the RTC has been appointed receiver. It argues that until this court determines that the RTC has, in fact, an interest, the matter remains in the Bankruptcy Court.

In response to Amsave, the RTC asserts that the mere filing of a claim is not enough to satisfy the exhaustion requirement prescribed in FIRREA. Furthermore, the RTC asserts that the books and records of Ensign I indicate that the 34 loans at issue are assets of Ensign I, a failed depository institution.[10]

## DISCUSSION

Congress enacted FIRREA with the goal of providing a detailed regulatory framework so as to restore the financial integrity of the thrift industry's deposit insurance

---

9. 12 U.S.C. §§ 1821(d)(6) and (7) provide for judicial and administrative review of claims at either the end of the 180 day period within which the RTC is to allow or disallow claims, or after a disallowance.

10. *See supra* note 2.

fund and to deal expeditiously with failed depository institutions. P.L. 101–73, 103 Stat. 183, § 101[8]. "Central to the purpose was the establishment of the RTC to 'contain, manage, and resolve failed savings associations.'" *Id.* at § 101[7]. *Circle Industries, Div. of Nastasi–White, Inc. v. City Federal Sav. Bank,* 749 F.Supp. 447, 451 *aff'd* 931 F.2d 7 (2d Cir.1991).

Once the RTC is appointed receiver, it must promptly notify all creditors of the depository institution that they must present their claims, together with proof, to the reciever within 90 days of the date of the publication of the notice. 12 U.S.C. § 1821(d)(3)(B)(i). After a claim is submitted, the RTC has 180 days within which to determine whether or not to allow or disallow the claim, unless both the RTC and the claimant agree in writing to extend that date. 12 U.S.C. § 1821(d)(5)(A)(i) and (ii). Except as provided in 12 U.S.C. § 1821(d)(5)(C)(ii), claims filed after the date set in the notice shall be disallowed and such disallowance shall be final.[11] 12 U.S.C. § 1821(d)(5)(C)(i). At the end of that 180 day period, or upon disallowance of a claim, the claimant may either request judicial review of the claim, file suit on the claim, continue an action which was filed before the receiver was appointed or seek administrative review of the claim. 12 U.S.C. § 1821(d)(6)(A).

## I

█ This court will first consider Amsave's argument that the provisions of FIRREA do not apply to this case.

Amsave's argument is two-fold. First, Amsave argues that the RTC has not sufficiently shown that it has an ownership interest in the 34 contracts at issue. Amsave then concludes that since the very ownership of the assets is at issue, FIRREA, in and of itself, and the exhaustion requirement cannot yet be invoked. Second, Amsave argues that this court is the proper forum to hear the ownership issue, as bankruptcy law controls exclusively whether an interest becomes property of the estate.

At least two courts have found that FIRREA's claims procedure applies, precluding their jurisdiction, even where the failed institution's actual ownership over the asset is in dispute.

In *Capital Data Corp. v. Capital Nat. Bank,* 778 F.Supp. 669 (S.D.N.Y.1991), Capital Data Corp. ("CDC") sought to foreclose on a mortgage it was allegedly given as collateral by Capital National Bank ("CNB") to secure CNB's performance on a stock purchase agreement. Thereafter, CNB was declared insolvent by the Office of the Comptroller of the Currency, and the FDIC was appointed receiver.

The FDIC's examination of CNB's records failed to disclose the existence of the allegedly executed mortgage, notice of the exercise of the stock purchase option or CNB's ownership of the CDC stock. In compliance with FIRREA, the FDIC mailed letters to CDC informing it of its right as receiver to disaffirm contracts and leases to which CNB was a party. Two months after the deadline for filing claims, CDC filed a formal claim with the FDIC based on the alleged mortgage. The court found that CDC's failure to follow the procedures set forth in FIRREA warranted summary judgment in favor of the FDIC.

In the case of *Resolution Trust Corp. v. Elman,* 761 F.Supp. 245, *aff'd* 949 F.2d 624 (2d Cir.1991), the RTC, as successor in interest to a failed depository institution brought action by Order to Show Cause requiring the defendant law firm to turn over files related to defendant's representation of the institution prior to the RTC's takeover. The defendant moved to dismiss or join the bank as an indispensable party. The defendant refused to turn over the files until its fees were paid, arguing that the files were subject to a common law retaining lien.

The court first addressed the issue of its subject matter jurisdiction. The defendant argued that under state law, the court could not order it to transfer the files without first requiring either payment of its fees or the posting of a bond. In order to

---

**11.** 12 U.S.C. § 1821(d)(5)(C)(ii) does not apply to this case.

make that decision, the court found that it would be required to make a determination as to the value of the defendant's claim. There was also an issue as to whether the defendant's retaining lien attached to the funds held in escrow by the defendant. Referring to the Third Circuit's decision in *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir.1991), the court held that whether the law firm's alleged retaining lien would place it in a better position versus the debtor's other creditors should be determined by the RTC in accordance with its regulations. *Elman*, at 248.

Both *Capital Data Corp.* and *Elman* are instructive, as in both cases the RTC's rights to the property/assets was in dispute. Here, Amsave argues that the RTC has failed to present any evidence of ownership of the 34 loans at issue. In light of the foregoing decisions this court finds no merit in Amsave's argument that the RTC must first prove in this court its ownership interest in the 34 loans before the provisions of FIRREA are invoked. The administrative claims procedure established under FIRREA is, at least initially, the proper forum for resolution of that issue.

## II

Amsave next argues that inasmuch as the 34 contracts are property of the debtors' estates, subject to Amsave's lien, and bankruptcy law controls exclusively whether an interest becomes property of the estate, this court is the proper forum to make a determination as to the extent and validity of its lien.

The Supreme Court has recently considered the conflict between a bankruptcy court's exclusive jurisdiction over property of the estate versus actions taken by a regulatory board.[12]

In *Board of Governors of the Federal Reserve System of the U.S. v. MCorp Financial, Inc.*, 502 U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358, (1991), after the company's creditors filed an involuntary petition in bankruptcy, MCorp, a bank holding company, filed voluntary petitions under Chapter 11 of the Bankruptcy Code in March 1989. The debtor then initiated an adversary proceeding against the Board of Governors of the Federal Reserve seeking to enjoin the prosecution of two administrative proceedings. The Financial Institutions Supervisory Act of 1966 (FISA), 12 U.S.C. § 1818 et seq., the Bank Holding Company Act of 1956 (BHCA), 12 U.S.C. § 1841, et seq., and the International Lending Supervision Act of 1983, 12 U.S.C. § 3901, et seq., all grant the Federal Reserve Board substantial regulatory power over bank holding companies and establish a scheme of judicial review over Board actions.

MCorp argued that the District Court's injunction against the prosecution of the Board proceedings was authorized either by the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362,[13] or by 28 U.S.C. § 1334(b),[14] which authorizes district courts in bankruptcy proceedings to exercise concurrent jurisdiction over certain civil proceedings. The Court held that the Board actions fell within 11 U.S.C. § 362(b)(4), which provides that the automatic stay will not reach proceedings to enforce a governmental unit's police or regulatory power.

---

**12.** 28 U.S.C. § 1334(d) grants the District Court where a title 11 case is pending exclusive jurisdiction over all property, of the debtor, as of the commencement of the case and over property of the estate, wherever located. 28 U.S.C. § 157 allows the District Court to refer all cases under title 11 and all core proceedings arising under title 11 or in a case under title 11 to the bankruptcy courts for that district.

**13.** 11 U.S.C. § 362(a)(1) provides that the filing of a petition in bankruptcy operates as a stay, applicable to all entities, of the commencement or continuation of an administrative proceed-

ing. 11 U.S.C. § 362(a)(3) stays any act to obtain property over the estate or to exercise control over property of the estate.

**14.** 28 U.S.C. § 1334(b) provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

MCorp also argued that it was protected by 11 U.S.C. §§ 362(a)(3) and (a)(6), which stay any act to obtain possession of, or exercise control over, property of the estate or to recover claims against the debtor that arose prior to the filing of the bankruptcy petition. MCorp argued that the ultimate objective of one of the Board proceedings was to gain control over the corporate assets of the debtor. The Supreme Court held that inasmuch as the Board had at that point only issued "Notices of Charges and of Hearing" and had expressed its intent to determine whether MCorp violated specific regulatory provisions, it was not attempting to gain control over debtors assets, and therefore, the Board actions would not be stayed by the filing of the petition.

> It is possible, of course, that the Board proceedings, like many other enforcement actions, may conclude with the entry of an order that will affect the Bankruptcy court's control over the property of the estate, but that *possibility* cannot be sufficient to justify the operation of the stay against an enforcement proceeding that is expressly exempted by subsection (b)(4). To adopt such a characterization of enforcement proceedings would be to render § 362(b)(4)'s exception almost meaningless.

*MCorp*, 502 U.S. at ——, 112 S.Ct. at 464, 116 L.Ed.2d at 368. The Court did, however, indicate that to the extent that judicial proceedings were instituted to enforce an order of the Board, at that time, it would be appropriate for the Bankruptcy Court to exercise its concurrent jurisdiction.

> If and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction under 28 USC § 1334(b) [28 USCS § 1334(b)]. We are not persuaded, however, that the automatic stay provisions of the Bankruptcy Code have any application to on-

going, nonfinal administrative proceedings.

*Id.*

The result of *MCorp* is that to the extent that the Board's actions did not exceed its authority under FISA and did not seek control over property of the estate, the actions would not be stayed. However, if and when the proceedings reached a point where control over the assets was sought, the District or Bankruptcy Court's jurisdiction under 28 U.S.C. § 1334(b) would be invoked, precluding further Board action over property of the estate.

The Bankruptcy Court in *In re Parker North American*, 131 B.R. 452 (Bankr. C.D.Cal.1991), is the only court which has considered the conflict between FIRREA and the Bankruptcy Code.

In *In re Parker North American*, the debtor initiated an adversary proceeding to avoid and recover certain preferences pursuant to 11 U.S.C. § 547(b) from Sooner Federal Savings & Loan Association, which was under receivership of the RTC. In its motion for summary judgment, the RTC argued, *inter alia*, that the preference claim should be dismissed for failure to file a claim as required by FIRREA. Holding that compliance with FIRREA's claims procedure is a mandatory prerequisite to maintenance of a federal suit, the Bankruptcy Court ruled that it was without jurisdiction to hear the debtor's preference action. In considering the conflict between the Bankruptcy Code and FIRREA, the court posited,

> FIRREA is very clear that the Procedures are to be followed absolutely without exception. Congress knew when it passed FIRREA that the Bankruptcy Code provided certain rights for debtors-in-possession and trustees that might result in claims being asserted against RTC. Despite this, it did not create any exception to the bright-line application of the Procedures. Accordingly, I believe the assertion of claims by a debtor-in-possession or trustee in bankruptcy must be done in accordance with the Procedures.

*Id.*, at 457. *See also In re Mid America Entertainment Plus, Inc.*, 135 B.R. 419 (D.Kan.1991).[15]

Taking the aforementioned cases together, the courts seem to hold that to the extent that FIRREA's procedures do not attempt to take control over property of the estate, the procedures provided therein must be exhausted before a judicial determination on the claim can be made.

## III

■ The RTC argues that this court lacks subject matter jurisdiction to determine the extent and validity of Amsave's interest in the 34 contracts at issue. Specifically, the RTC argues that Amsave must exhaust the administrative remedies provided in FIRREA before seeking judicial review of its claims.

12 U.S.C. § 1821(d)(13)(D) provides,

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

All courts which have considered the issue have held that claimants must exhaust the administrative remedies of FIRREA before resorting to judicial review. *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49 (3d Cir.1991) (In conducting an inquiry into whether the 90–day stay under 12 U.S.C. § 1821(d)(12) is appealable, the Third Circuit found that a claimant against a failed thrift must exhaust FIRREA's administrative remedies.); *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir.1991) (The court held that even a valid retaining lien against the files of a law firm's former client cannot be used to circumvent the claims procedure established under FIRREA.); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383 *cert. den.* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) (Plaintiffs, participants in and beneficiaries of a retirement benefit plan of a failed savings institution, brought action against the RTC for various violations of ERISA. The court held that to the extent that 12 U.S.C. § 1821(d)(13)(D) conflicts with a provision of ERISA granting the District Court jurisdiction, § 1821(d)(13)(D) prevails.); *Resolution Trust Corporation v. Elman*, 761 F.Supp. 245 (S.D.N.Y.1991); *In re Mid America Entertainment Plus, Inc.*, 135 B.R. 419 (D.Kan.1991); *Capital Data Corp. v. Capital Nat. Bank*, 778 F.Supp. 669 (S.D.N.Y.1991); *Decrosta v. Red Carpet Inns Intern., Inc.*, 767 F.Supp. 694 (E.D.Pa.1991) (The RTC's motion to dismiss was granted where plaintiff failed to exhaust the administrative procedures under FIRREA before filing personal injury claim against the RTC, as receiver of a failed savings institution which operated an inn as franchisee); *U.S. v. Altman*, 762 F.Supp. 139 (S.D.Miss.1991) ("[C]laims asserted against the RTC that fall within the scope of section 1821(3)(13)(D) must comply with the procedural requirements of FIRREA and cannot fall within the ancillary jurisdiction of the Court merely because they are asserted in a third party complaint." *Id.* at 143.) *In re Parker North American*, 131 B.R. 452 (Bankr.C.D.Cal. 1991); *Rexam Ltd. Partnership, S.E. v. Resolution Trust Corp.*, 754 F.Supp. 245 (D.P.R.1990) (Finding that the exhaustion

---

**15.** In *Mid America,* the Chapter 7 trustee filed an adversary proceeding against the RTC as receiver for a failed savings institution, alleging that the RTC breached a settlement contract by failing to close sale of property. The RTC filed a motion to withdraw the reference. The District Court first found that the exhaustion requirements of FIRREA were a prerequisite to the subject matter jurisdiction of the district courts. The court held that the Bankruptcy Court could not properly decide the trustee's adversary complaint without first determining that it had subject matter jurisdiction in light of 12 U.S.C. § 1821(d)(13)(D). In light of both of its findings, the court withdrew the reference in order to examine the scope of FIRREA and its impact on the bankruptcy court's jurisdiction.

of administrative procedures under FIR-REA, including the opportunity to arbitrate, is mandatory, the court granted the RTC's motion to compel exhaustion of administrative procedures.); *Circle Industries, Div. of Nastasi–White, Inc. v. City Federal Sav. Bank,* 749 F.Supp. 447, 451 (E.D.N.Y.1990) *aff'd* 931 F.2d 7 (2d Cir. 1991) (The court found that it lacked subject matter jurisdiction over a failed savings institution where the plaintiff subcontractor failed to exhaust its administrative remedies before filing action in the District Court for breach of contract, misrepresentation with the intent to induce, and breach of covenant to deal in good faith.); *Tuxedo Beach Club Corp. v. City Federal Sav. Bank,* 737 F.Supp. 18 (D.N.J.1990) (The District Court stayed a breach of contract case against the defendant bank which was declared insolvent two days after the filing of the action. The court held that the action should be stayed during the 180 day period within which the RTC is to determine creditors' claims.)

The mandatory nature of the exhaustion requirement and the rationale behind it are clearly set forth in the legislative history accompanying FIRREA.

> After exhaustion of streamlined administrative procedures, a claimant has a choice to either bring the claim *de novo* in the District court in which the insured institution had its principal place of business or have the claim determination reviewed by one or more administrative processes....
>
> ....
>
> This construct of administrative resolution and *de novo* judicial determination is responsive to the constitutional and statutory concerns with the FSLIC's current claims adjudication process as outlined by the Supreme court in *Coit Indepen-*

*dence Joint Venture vs. FSLIC* (March 21, 1989)....

....

> The claims determination procedure set forth in subsection (1) creates a system which not only meets the concerns raised by the *Coit* case, but also enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly. The exhaustion requirements should lead to a large number of claims being resolved without resort to further procedures.... Thus, the claim resolution process established in this section should allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District courts.

H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 2, *reprinted in* 1989 U.S.C.C.A.N. 86, 214.[16]

This court agrees that under 12 U.S.C. § 1821(d)(13)(D), Amsave must first exhaust the administrative claims procedure established under FIRREA before seeking a judicial determination with respect to its rights to the 34 loans at issue. A determination as to which party has priority in this collateral does not have the effect of seeking control over the debtor's property. *MCorp,* 500 U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). In fact, it is undisputed that these loans are assets of the debtor. However, due to the fact that Amsave's complaint will necessarily require a determination of its rights as *against the RTC,* that issue must be resolved under FIRREA. *Elman,* at 248.

■ The notice published by the RTC announcing that Ensign II had been placed under receivership of the RTC stated that all creditors holding claims against Ensign II must present their claims to the RTC within 90 days from July 24, 1991 (the date of the first announcement). Amsave filed

---

**16.** In *Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), the Supreme Court held that "the statutes governing the FSLIC and the Bank Board, do not grant the FSLIC adjudicatory power over creditors' claims against insolvent savings and loan associations under FSLIC receivership, nor do they divest the courts of jurisdiction to consider those claims de novo." *Id.,* at 572, 109 S.Ct. at 1368.

Furthermore, inasmuch as the procedures did not provide a time limit within which the FSLIC was required to make a determination on the claims filed, the Court held that when administrative procedures are inadequate, they need not be exhausted. *Id.,* at 587, 109 S.Ct. at 1375–76.

its claim on October 22, 1991, the last date for the filing of such claims. However, the complaint to determine the extent and validity of its lien was filed on September 12, 1991.

In *Matter of NNLC Corporation*, 136 B.R. 611 (Bankr.D.Conn.1992), the Chapter 7 trustee brought an action to avoid a preferential transfer and a security interest made by debtor to a bank. After discovery was completed, the bank moved for summary judgment. On the day that the trustee filed papers in opposition, the bank was declared insolvent and the FDIC was appointed receiver. The FDIC was substituted for the bank as defendant. Thereafter, the FDIC, as receiver, filed a motion to dismiss or stay the preference action until the FIRREA procedures were exhausted. Judge Krechevsky found that the language of 12 U.S.C. §§ 1821(d)(5)(F)(ii) and (d)(6)(A) implies that the court retains jurisdiction over a proceeding which was filed before a receiver was appointed, but that the court may not decide the issues until the administrative claims procedure is exhausted.[17] He therefore stayed the entire adversary proceeding until the FIRREA procedures were exhausted.

In the case at bar, however, Amsave's complaint was filed on September 12, 1991, more than one month *after* the RTC was appointed receiver of Ensign II. To allow this court to retain jurisdiction over this matter would circumvent the procedures of FIRREA, which allows for continuation only of those actions filed *before* a receiver was appointed. Accordingly, Amsave's complaint must be dismissed.[18]

## CONCLUSIONS

FIRREA prohibits any court from asserting subject matter jurisdiction over any assets, disputed or not, in which the RTC,

as conservator or receiver of a failed depository institution claims an ownership interest unless and until the claims procedure has been exhausted.

The Resolution Trust Corporation shall submit an Order consistent with this opinion within ten (10) days.

---

**17.** 12 U.S.C. § 1821(d)(5)(F) provides that the for the purposes of any statute of limitations, the filing of a claim with the receiver shall be considered the filing of an action, and will not prejudice the rights of the claimant to continue an action which was filed before the appointment of the receiver.

12 U.S.C. § 1821(d)(6)(A) provides that after the administrative procedures have been exhausted, a claimant may request administrative

or judicial review of its claims, file suit on the claim or continue an action filed *before* a receiver was appointed.

**18.** This court takes no position with respect to the RTC's failure to make a determination on Amsave's seemingly properly filed claim, except to say that neither 12 U.S.C. § 1821(d)(5)(F) nor (d)(6)(A) apply to the facts of this case.