**Roy P. HIBYAN, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION and the One Bancorp, Defendants.**

**Civ. No. 92–181–P–C.**

United States District Court, D. Maine.

Feb. 5, 1993.

Graydon Stevens, Portland, ME, for plaintiff.

Thomas Cox, Portland, ME, for FDIC.

Terry Fralich, Portland, ME, for One Bancorp.

## MEMORANDUM AND ORDER GRANTING FDIC'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

In this action Plaintiff, the former president of Maine Savings Bank (MSB) seeks compensation and benefits allegedly owed him under an employment contract between Plaintiff and MSB, guaranteed by Defendant The One Bancorp [1] (TOB). The FDIC has moved for summary judgment on Count I. (Docket No. 12).

Under Federal Rule of Procedure 56(c), summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Court of Appeals for the First Circuit has recently stated:

> When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect brevis disposition."
> . . .
> This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. ... "In this context, 'genuine' means that the evidence

---

**1.** The case has been stayed as to Defendant The One Bancorp because that Defendant is involved in bankruptcy proceedings. (Docket No. 3).

about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." ... This requirement has sharp teeth: the plaintiff "must present definite, competent evidence to rebut the motion...."

*Wynne v. Tufts University School of Medicine,* 976 F.2d 791 (1st Cir.1992).

The undisputed material facts are as follow. Plaintiff was president and chief operating officer of MSB. On February 1, 1991, MSB was declared insolvent and closed on the application of the State of Maine and Maine's Superintendent of Banking. Also on February 1, 1991, the FDIC was appointed receiver of MSB. In both its corporate and receivership capacities, the FDIC executed a Purchase and Assumption Agreement with Fleet Bank of Maine. Under that agreement, dated February 1, 1991, Fleet assumed the assets and certain specified deposit and other liabilities of MSB. Fleet did not assume any liabilities relating to employee contracts or benefit plans.

At the time MSB closed Plaintiff was its president. He worked for Fleet until February 8, 1991, and Fleet was credited by the FDIC for that portion of the compensation paid to him for work requested by the Receiver.

■ In July 1990 Plaintiff had entered into an employment agreement with MSB and Defendant TOB. In paragraph 15 the agreement provides that for a period of one year after his termination Plaintiff will not, through specified actions, compete with MSB and TOB and that in return, during that period he will be paid his basic compensation in addition to any other payments or benefits payable under the contract. The contract also provides that in the event Plaintiff is terminated within three years of certain specified "change in control events," MSB or TOB will pay Plaintiff two years salary plus specified benefits. The change in control events allegedly triggering payment of the money

sought here are defined in pertinent part as occurring when:

(a) Any person shall become the beneficial owner, directly or indirectly, of securities representing 20 percent or more of the combined voting power of the outstanding securities of the Company of the Bank ...

(b) The Company or the Bank shall be a party to any merger or consolidation with another corporation, association or business entity, which merger or consolidation shall be consummated or shall sell, exchange or transfer all or substantially all of its assets to some other person....

(c) The Company shall cease to be a publicly owned corporation.

Employment Agreement, ¶ 13.

The agreement also states its purpose as seeking to assure the continued services of Plaintiff by providing "for an Agreement under which the minimum basic compensation of Employee will be established and Employee will agree to continue to render services and the Bank will agree to employ Employee, subject to the terms and conditions set forth herein."

In May 1991, Plaintiff submitted a Proof of Claim to the FDIC asserting a claim for change of control benefits under the contract. The Proof of Claim did not seek benefits under the non-compete provisions of the contract. Plaintiff has submitted no other Proof of Claim. The FDIC allowed Plaintiff's claim for vacation benefits and disallowed the remainder of the claim.

Prior to February 1, 1991, no person had become the beneficial owner of 20 percent or more of MSB's or TOB's securities. Also prior to that date neither MSB nor TOB was a party to any merger or consolidation with another corporation, association or business entity. Neither MSB nor TOB sold, exchanged, or transferred its respective assets to some other person or entity. TOB, referred to in the agreement as The Company, had not ceased to be a publicly owned corporation as of February 1, 1991.

Plaintiff argues that FDIC's transfer to Fleet of the assets of MSB constitutes a change of control of event contemplated by

the agreement. The Court addressed the identical issue in *Winters v. Federal Deposit Insurance Corp.*, 812 F.Supp. 1 (D.Me.1992 and 1993). In *Winters* another officer of MSB tried to recover under a contract which had the same definition of change in control events found here. The Court held that the language of the contract was unambiguous in its definition of change of control events, and that that definition clearly excluded involuntary transfers of assets, like this one, where the FDIC succeeded to the assets of a failed bank by operation of law and then transferred those assets under a purchase and assumption agreement to another party. *Id.*

The contract language plainly states that a change of control event occurs if "The *Company or the Bank shall ... sell, exchange or transfer* all or substantially all of its assets to some other person...." The contract clearly requires affirmative action by either TOB or MSB. In this case MSB, by action of the Maine regulators, was closed and disabled from selling, exchanging or transferring its assets. The transfer was accomplished by the FDIC in its role as MSB's Receiver.

Plaintiff argues strenuously that the parties intended for involuntary transfers like the one effected here to be considered change of control events and that the contract should be construed to implement the parties' intent. He suggests that this contract differs from that at issue in *Winters* because TOB is a guarantor of the obligations of MSB, demonstrating that the failure of the bank and involuntary transfer of assets was contemplated by the parties when they made the contract. The Court does not find that the guarantee either elucidates the parties' intent in the manner suggested by Plaintiff or creates an ambiguity as to the parties' intent. The guarantee is fully consistent with the idea of a merger or voluntary transfer of all assets after which MSB no longer exists to carry out its obligations under the contract.

■ Plaintiff argues that the Court should interpret the agreement in light of the circumstances of the parties when the contract was made. He offers parol evidence to show that MSB was in dire straits and that its failure and an FDIC takeover were contemplated. There is no ambiguity in the contract about the circumstances under which the contract was made and the motive for making the agreement. *See Baybutt Construction Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 919 (Me.1983), *overruled on other grounds by Peerless Ins. Co. v. Brennon*, 564 A.2d 383 (Me.1989). There is thus no justification for resorting to such extrinsic evidence. *See Ames v. Hilton*, 70 Me. 36, 46 (1879). Obviously, with the contract the MSB and TOB wished to offer protection to Plaintiff from certain uncertainties in MSB's future to induce him to stay on with the bank. The agreement was not to provide protection in all eventualities, however, and the language chosen makes this explicit for it very specifically defines the limited circumstances which will constitute change of control events. Had the parties wanted to provide broader protection, they would clearly have used more inclusive language.

■ Plaintiff offers parol evidence in the form of affidavits and depositions to show that the intent of the contract was to include the involuntary transfer of assets after the failure of MSB in the definition of change of control event. As the Court stated in *Winters*, such evidence "cannot raise an issue of material fact because the Court has determined that the contract is unambiguous, and parol evidence cannot be used to generate an ambiguity in an unambiguous contract." *Winters*, 812 F.Supp. at 5; *Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me. 1983). Plaintiff has also sought to offer extrinsic evidence of TOB's conduct regarding the contract following the failure of MSB. As the Maine Law Court recognized long ago in the context of a deed, the clear and unambiguous language of a contract cannot be set aside and different language substituted "by parol proof of the acts of the parties, either before or after the [contract] is made." *Ames v. Hilton*, 70 Me., at 46 (1879). Plaintiff's contract states, that he will be paid compensation and bene-

fits in the event of a change of control event. Since no change of control event as defined by the contract has taken place, Plaintiff is not entitled to the benefits he seeks under the change of control provisions of the contract. Based on the unambiguous language of the contract, therefore, summary judgment for the FDIC is appropriate on that portion of Count I seeking compensation and insurance benefits as a result of Plaintiff's termination following an alleged change of control event.

■ Count I also seeks damages from the FDIC under that portion of the contract providing for compensation if Plaintiff does not compete with MSB and TOB for a year following his termination. Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821, "participation in the administrative claims review process [is] mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver." *Marquis v. Federal Deposit Insurance Corp.*, 965 F.2d 1148, 1151 (1st Cir. 1992). The record shows without dispute[2] that Plaintiff has not met this exhaustion requirement with respect to his claim based on the non-compete provisions of the contract. Defendant is, therefore, entitled to summary judgment on that portion of Count I seeking damages from the FDIC under the non-compete provisions.

Accordingly, it is *ORDERED* that Defendant's motion for summary judgment on Count I be, and it is hereby, *GRANTED*.

SO ORDERED.

---

**2.** Plaintiff has failed to address Defendant's exhaustion argument in his brief opposing the motion.