**INTERLEASE CORPORATION,**
**Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Goldome Bank, Defendant.**

Civ. A. No. 92–1093.

United States District Court,
District of Columbia.

May 11, 1993.

Leonard C. Pederson, Jr., Schulze, Sorrell & Pederson, P.C., Washington, DC, for plaintiff.

Stuart M. Gerson (then Asst. Atty. Gen.), Jay B. Stephens (then U.S. Atty.), J. Christopher Kohn, Sandra P. Spooner, Sereen J. Charlick, Civ. Div., Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

This matter comes before the Court on Federal Deposit Insurance Corporation's Motion for Partial Summary Judgement ("defendant's motion"), filed with the Court on February 12, 1993. Upon consideration of defendant's motion, all responsive memoranda thereto and the entire record in this case, and after hearing argument in open court on March 12, 1993, the Court for the reasons expressed herein will deny defendant's motion.

## I. BACKGROUND

The defendant, the Federal Deposit Insurance Corporation ("FDIC") is being sued in its capacity as receiver for Goldome Bank, an FDIC-insured institution that did business in the state of New York until May 31, 1991 when it was closed by the Comptroller of Currency due to insolvency. The plaintiff had borrowed money from Goldome. It paid the loan off early at the amount Goldome represented was the payoff figure. The plaintiff claims that Goldome overstated the payoff figure and that plaintiff consequently overpaid Goldome. The plaintiff had been engaged in litigation over this matter against Goldome in the Western District of New York, but that suit was stayed on July 15, 1992 due to Goldome's insolvency.

On August 21, 1991, the plaintiff submitted a claim with the FDIC in the amount of $42,988.77 pursuant to a notice it received from FDIC. The FDIC was acting in accordance with 12 U.S.C. § 1821(d)(3) of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), which gave it the power to determine claims of creditors of failed institutions when acting as receiver for

those institutions. The FDIC disallowed plaintiff's claim on March 12, 1992. Plaintiff filed suit in the case at bar on May 7, 1992, seeking $79,000.00 plus interest. FDIC filed its motion on February 12, 1993, arguing that this Court does not have subject matter jurisdiction over any amount in controversy in excess of the $42,988.77 claim plaintiff earlier submitted to FDIC.

## II. DISCUSSION

Both parties agree that plaintiff was required under FIRREA to exhaust its administrative remedies with the FDIC before it could file suit here. The only issue is whether FIRREA limits plaintiff's claim before this Court to the dollar amount plaintiff requested in the claim it submitted to FDIC. FIRREA, unlike the Federal Tort Claims Act (the "FTCA"), contains no provision which directly addresses this issue.[1]

Plaintiff claims that the absence of such a provision indicates that Congress did not intend to limit the dollar amount of the district court claims. FDIC argues that plaintiff's interpretation is incorrect because it undercuts the reason Congress created the administrative claims review process under FIRREA, which is to enable the FDIC to "dispose of the bulk of claims against failed financial institutions expeditiously and fairly". H.R.Rep. No. 101–54(I), 101st Cong., 1st. Sess. at 418–19, reprinted in 1989 U.S.C.C.A.N. 86, 214–15. FDIC argues that if plaintiff's logic were accepted, claimants could file pro forma claims in nominal amounts, and then after their denial, file lawsuits in district court seeking greater sums labelling their requests "amendments" to the claims process. Plaintiff responds that at the time it filed its claim with the FDIC, it had no way of knowing how much money it was due. It argues that under FDIC's interpretation of FIRREA, a prudent lawyer would always file a claim substantially in excess of what it believed to be correct, thereby hindering the FDIC's ability to fairly and expeditiously assess the true merits of the claim.

The FDIC cites two cases it claims are on point. The first is Gagne v. Bank of New England, Nos. 88–C–089, 88–C–1792 (N.H.Sup.Ct. May 11, 1992), in which the court granted FDIC's request to strike that portion of the plaintiff's claim which was in excess of the $10,000.00 claim plaintiff had earlier filed with FDIC. The Court did not go into detail about the reasons for its decision, stating only that 12 U.S.C. § 1821(d)(6)(B)(ii)[2] and the cases interpreting FIRREA mandated "strict compliance" with FIRREA's exhaustion of administrative remedies requirement. See Exhibit 3 to defendant's motion at 4–5. The case law is clear that the statutory procedures of FIRREA must be exhausted before a court has jurisdiction to hear a claims controversy. See e.g., United States v. Altman, 762 F.Supp. 139, 143 (S.D.Miss.1991). However, none of the cases cited by either FDIC or the Court in Gagne address whether this means that the subsequent district court claim is limited to the dollar amount requested in the FDIC claim.

The other case the government cites as being on point is Hibyan v. Federal Deposit Insurance Corporation, 812 F.Supp. 271 (D.Me.1993). In Hibyan, the plaintiff, a former president of Maine Savings Bank (MSB) filed a claim with FDIC (after MSB failed) relating to a provision in his employment contract with MSB and with The One Bancorp ("TOB") which provided that if plaintiff was terminated within three years of

---

1. The provision addressing this issue in the FTCA states:

   Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon the allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C. § 2675(b).

2. This provision of FIRREA provides that if any claimant fails to file suit on its district court claim within the time period described in subparagraph (A), "the claim shall be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim".

certain specified "change in control events", MSB or TOB would pay plaintiff two years salary plus specified benefits. *Hibyan*, 812 F.Supp. at 273. After his claim was disallowed by FDIC, plaintiff filed suit against FDIC in the United States District Court for the District of Maine, seeking relief in regard to the "change in control events" provision in his employment contract as well as in regard to a no compete clause in the contract. The Court granted FDIC's motion for summary judgement in regard to this second claim because plaintiff did not meet his "exhaustion requirement" with respect to it. *Id.* at 273. In the case at bar, though, the claim plaintiff brought before this Court is the same as the one it submitted to FDIC; the only question is whether plaintiff can seek a greater dollar amount here than it did at the administrative level. *Hibyan* does not shed light on that issue.

As plaintiff points out, FIRREA, unlike the FTCA, does not contain a provision which specifically limits the size of a district court claim to the dollar amount previously claimed at the administrative level. The question of whether or not FIRREA nevertheless *does* limit claims in such a way appears to be one of first impression both in this jurisdiction and in others. In order to decide this question, then, the Court will turn to the legislative history of FIRREA to determine how to best effect the purpose behind the Act.

As stated, *supra*, Congress created the administrative claims review process in order to enable FDIC to "expeditiously and fairly" dispose of the claims against failed institutions. H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. at 418–19, *reprinted in* 1989 U.S.C.C.A.N. 86, 214–15. In looking at the question before this Court in light of this Congressional goal, it becomes clear that the best interpretation of the word "claim" is the one which most encourages claimants to be as accurate as possible in regard to the amounts they seek before the FDIC. In that regard, FDIC's argument that plaintiff's interpretation would spawn "pro forma claims in nominal amounts" is unpersuasive, because claimants would be loath to file such perfunctory claims for fear that they would be *grant-ed.* On the other hand, if FDIC's logic were accepted, claimants would, as plaintiff suggests, undoubtedly file excessive claims in order to protect themselves in the event that their claims failed.

The Court thus finds that plaintiff's interpretation of the word "claim" as found in FIRREA is correct, because it would neither put pressure on claimants to overstate their claims nor would it encourage them to understate claims. Defendant's Motion for Partial Summary Judgement must therefore be denied, because FIRREA does not limit the dollar amount of plaintiff's district court claim to that which plaintiff earlier sought in its claim before the FDIC.

## III. CONCLUSION

FIRREA neither explicitly nor implicitly commands that a party must limit the amount it seeks in an otherwise properly filed district court claim to the amount it sought in its previously filed claim before the FDIC. Moreover, the congressional goal in enacting FIRREA of enabling FDIC to expeditiously and fairly dispose of the claims against failed institutions would not be furthered by imposing such a limitation on claimants.

Therefore, it is by the Court this 10th day of May, 1993

ORDERED, that the defendant's Motion for Partial Summary Judgement be denied.